**UHLEY v. UNITED STATES.**
**No. 57-53.**

United States Court of Claims.
June 8, 1954.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the brief.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen. for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff is a resident of Michigan. He enlisted in the Army Air Force May 22, 1943. On May 23, 1944, having completed the prescribed course as an aviation cadet, he was commissioned a Second Lieutenant and in that capacity served on active duty until December 24, 1945, when he was released by the Army from active duty to an inactive status without retirement benefits as hereinafter set forth. Plaintiff alleges in his petition that:

On October 30, 1944, he was sent to the European Theatre of Operations as a pilot of fighter planes. On January 22, 1945, during his fifth flight mission and while escorting bombers over Germany, his engine caught fire and exploded and he was forced to bail out with parachute at an altitude of approximately 8,000 feet. After striking the ground, he lay unconscious for a period of about 28 hours, when he was taken a prisoner of war and remained in that status until liberated on April 17, 1945.

As a result of plaintiff's fall to the earth, he suffered manifold injuries to his head and body, including concussion of the brain; a fracture of the left skull and jaw; a fracture of his right ankle and fibula; a ruptured artery in the left temple area; ruptured ligaments in his right knee and a dislocation thereof, and an anterograde amnesia for several days following the accident. From the time he received his injuries, January 22, 1945, to the day he went on terminal leave, November 6, 1945, plaintiff was incapacitated for active military service and spent a large portion of his time in hospitals from which he finally emerged with several severe permanent injuries, residuals of the violent shock, fractures, and concussions sustained in the fall. On the basis of these injuries, the Veterans Administration awarded plaintiff a combined 60% disability rating based upon the following disabilities:

30% unstable right knee, residual of fracture.

30% encephalopathy, traumatic.

10% arthritis, traumatic, right ankle, residual of ankle injury.

0% residual of fractured jaw.

Plaintiff claims that he is entitled to retirement pay in the amount of $112.50 per month from December 12, 1945 to July 1, 1946; $135 per month from July 1, 1946 to May 1, 1952, and $139.40 per month from and after May 1, 1952, less Veterans Administration disability compensation received by plaintiff during this entire period.

At the time of his separation from the service, plaintiff was informed by medical officers of the Air Force that his disabilities were not sufficient to make him eligible for retirement and he was released not for physical disability. As a result of said erroneous release and information, plaintiff was led to believe that his injuries were either not disabling enough for retirement, or, if so, were not permanent and would eventually be cured or alleviated.

In 1950, after several years of treatment and disappointment, it became ap-

parent that plaintiff's injuries would never improve and were permanent and plaintiff sought advice from a veterans service organization as to whether he was entitled to retirement with pay from the time of his separation. After an investigation, the organization informed plaintiff that he was manifestly entitled to such retirement pay, and such organization was about to file an application in his behalf for a hearing before a retiring board when it was informed that under a ruling of the Comptroller General a retiring board would have no jurisdiction to entertain such an application because plaintiff had been released not for physical disability.

Because of the ruling of the Comptroller General, the Armed Services did not entertain any applications for disability retirement pay of officers separated for reasons other than physical disability until some time after the enactment, on October 25, 1951, of P.L. 220, 82d Congress, 1st Session, 65 Stat. 655, 5 U.S.C.A. § 191a, amending Section 207 of the Legislative Reorganization Act of 1946. In this statute this omission in the jurisdiction of the Armed Services to consider disability retirement was corrected and authority given to boards for the correction of military and naval records to entertain such applications. Pursuant to this statute, plaintiff on or about May 16, 1952, filed an application with the Air Force Board for the Correction of Military Records but the Board and the Secretary of the Air Force arbitrarily, capriciously and without support of any evidence and contrary to the evidence, found that plaintiff was not permanently incapacitated for active military service at the time of separation, as in fact he was, and, on January 2, 1953, denied his application.

We are of the opinion that defendant's motion to dismiss on the ground of the statute of limitation is not well taken, and such motion should be denied.

Plaintiff, a non-regular officer, was denied the right to appear before a retirement board about April 1951. His petition was filed in February 1953. This would be enough to require dismissal of the motion, but we should hear proof as to why the Air Force Board for the Correction of Military Records denied plaintiff's application for correction of such records and permit plaintiff to appear before a retirement board. This action was taken January 2, 1953.

We have held that Reserve officers are entitled to the same treatment as Regular Army officers, Carlin v. United States, 100 F.Supp. 451, 121 Ct.Cl. 643. Disability retirement pay for non-regular officers of the U. S. Army, such as plaintiff, was provided for by the Act of April 3, 1939, 53 Stat. 557, as amended, 10 U.S.C.A. § 456. Under this statute the President issued Executive Order 8099, April 28, 1939, amended by Executive Order 8461, June 28, 1940, Title 3 CFR Cum.Supp. 482 and 680, which provided:

"* * * the determination of all questions of eligibility for the benefits thereof, including all questions of law and fact relating to such eligibility, shall be made by the Secretary of War or someone designated by him in the War Department, in the manner and in accordance with the standards provided by law or regulations for Regular Army personnel."

The law and regulations governing the determination of eligibility for retirement of regular officers of the Army were R.S. §§ 1246–1250, 1253, 10 U.S.C.A. §§ 961–966; A.R. 35–3420, March 10, 1943, and A.R. 605–250, March 28, 1944. Under these statutes and regulations, the determination of the underlying facts must be made by retiring boards. As stated by the court in Spencer v. United States, 102 F.Supp. 774, 776, 121 Ct.Cl. 558, 567:

"This procedure, detailed in R.S. §§ 1246–1250, 1253, 10 U.S.C.A. §§ 961–966, provides that the Secretary of War, under the President's direction, shall create Army retiring boards to conduct hearings and inquire into the disability of any officer, enter findings as to its cause,

and transmit these findings to the Secretary of War for the action of the President. The procedure is the same whether an officer is a member of the Regular Army or of the Organized Reserves. The Army Regulations * * * in effect at the time plaintiff went before a retiring board, make no distinction between these classes of officers."

See, also, to the same effect, Hamrick v. United States, 96 F.Supp. 940, 120 Ct.Cl. 17; Potts v. United States, 125 U.S. 173, 8 S.Ct. 830, 31 L.Ed. 661; Robertson v. Chambers, 341 U.S. 37, 71 S.Ct. 547, 95 L.Ed. 726. Plaintiff was denied the right to have the matter of his eligibility for retirement determined in being denied the right to have his case determined and passed upon by a retiring board. Randolph v. United States, D.C., 69 F.Supp. 156.

Plaintiff has asserted, and defendant has not controverted, that until the passage of the Act of October 25, 1951, supra, there was no way for plaintiff to obtain the action "necessary to correct an error or remove an injustice," with regard to his military record. Plaintiff further asserts that his cause of action accrued, therefore, not at the time of his separation from the service, but at the time he was, as he alleges, arbitrarily and capriciously deprived of of the right conferred by statute to have his military records corrected. See Charles Gordon v. United States, Ct.Cl., 121 F.Supp. 625.

Although the alleged error in plaintiff's military record was committed, if at all, at the time of plaintiff's separation from the service in 1945, the wrong of which plaintiff here complains and for which he seeks judicial redress, is not the alleged error *per se*, but the alleged arbitrary and capricious deprivation of the right, conferred by the Act of October 25, 1951, to the action "necessary to correct an error or remove an injustice". Under these circumstances we are of the opinion that the suit is not barred by the statute of limitation.

We think it is clear, under the facts and circumstances of this case, that plaintiff's claim did not first accrue on December 24, 1945, as defendant contends.

Defendant's motion to dismiss is, therefore, denied.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration or decision of this case.