Opinion per curiam:
In all material aspects this case is identical with Gapps v. United States, No. 50425, decided this date, ante p. 811. On the basis of the opinion in that case, and the findings of *938 fact by the commissioner of this court in this case, which findings we hereby adopt, plaintiff is entitled to recover disability retirement pay from September 12, 1945, to date.: To be offset against this recovery is the amount of disability compensation received by plaintiff from the Veterans Administration as well as any mustering-out pay plaintiff may have received from the Army. Entry of judgment is suspended pending the receipt of a report by the General Accounting Office showing the amount due plaintiff.
It is so ordered.
FINDINGS OF FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Eoald A. Hogenson, makes the following findings of fact:
1. Plaintiff is a citizen of the United States and a resident of the State of Colorado.
2. On March 17, 1942, plaintiff entered the Air Corps, Army of the United States, as an enlisted man, for which service he was found physically qualified by examination conducted March 12, 1942. By a final type physical examination conducted July 2, 1942, plaintiff was found physically qualified for commissioned service, and he was accepted for Officers’ Candidate School on July 25, 1942, at which time he held the rank of corporal.
3. In August 1942 during his training at Officers’ Candidate School, Miami Beach, Florida, plaintiff sustained an injury to his right heel while jumping over an eight-foot wall on an obstacle course in authorized training. This injury was diagnosed as a fractured os calcis, right foot. For approximately 2y2 weeks plaintiff was hospitalized at Miami, Florida, where a cast was placed on the right foot and leg. On September 2, 1942, plaintiff was transferred to Fitzsimons Army Hospital, Denver, Colorado, where the old cast was removed and a new one applied to the foot and leg, and where plaintiff was treated with physiotherapy. The cast was removed in October 1942. From October 1942 to, January 1948, plaintiff was treated with physiotherapy at Nautilus Hospital, Miami Beach, Florida, where he was tutored and completed his O. C. S. course. He walked with *939 the aid of crutches from November 1942 to February 1943, after which he used a cane.
4. On January 19, 1943, plaintiff was honorably discharged from his enlisted service to accept a commission; and he was commissioned and entered on active duty as a second lieutenant, Air Corps, Army of the United States, January 20, 1943. There was no physical examination of the plaintiff conducted in connection with his entry upon commissioned service. He was then using crutches. Plaintiff was transferred in January 1943 to Biggs Field, El Paso, Texas, and was treated at William Beaumont General Hospital with physiotherapy. Plaintiff served on active duty at Biggs Field as legal officer until June 16,1945.
5. On September 4,1943, plaintiff was commissioned a first lieutenant, and on July 5, 1944, he was commissioned a captain, Air Corps, Army of the United States.
6. On June 18, 1945, plaintiff was admitted to the AAF Regional Hospital, Davis-Monthan Field, Tuscon, Arizona, on transfer from Biggs Field.
On June 21, 1945, an Officers’ Reclassification and Disposition Board convened at that hospital, considered plaintiff’s case, and made the following pertinent findings and recommendations:
16. After careful consideration of clinical records, laboratory findings and physical examination the Board finds the officer to have the following diagnos(ss), condition upon completion of case, and line of duty findings following each diagnosis:
Strain, moderately severe, chronic, muscles and fascia of foot and ankle, right, secondary to fracture os calcis accidentally incurred in authorized training, August 1942, Officers’ Candidate School, Miami Beach, Florida.
Condition on completion of case: Unchanged.
LOD: No, for commissioned service. Yes, for enlisted service.
17. Date of Origin of Incapacity: August 1942
18. Date Became Unfit for Duty: 18 June 1945
19. Is Cause of Incapacity Incident to Service: Yes
20. Existed prior to Entry on Comm, active duty: Yes
21. Permanently Aggravated by Active Duty: No
22. Maximum Hospital Benefit Received: Yes
*940 23. Is Defect Permanently Incapacitating for General Service: Yes
Degree of Disability for Military Service:
25. Partial
26. Permanent
Type of Service Recommended:
30. Limited Military Duty in bis M. O. S.
32. Tbe Board Recommends that:
Captain Ralph Loeb, formerly classified as qualified for full military duty, be returned to duty in a limited service status, but that this duty be limited to continental United States.
Attached to the findings and recommendation was a clinical abstract concerning plaintiff, which was signed by three Army medical officers, two of whom served as members of the Reclassification and Disposition Board. The abstract included a statement that the plaintiff had had persistent pain in his right heel since removal of the cast in October 1942, the recommendation that plaintiff be assigned to temporary limited service for six months, and the conclusion that plaintiff’s condition was such that he was permanently disqualified for overseas duty.
7. On July 6, 1945, plaintiff was admitted to AAF Regional and Convalescent Hospital, Santa Ana, California, on transfer from the hospital at Davis-Monthan Field, for the purpose of determining the appropriateness of his appearance before an Army Retiring Board.
On July 17,1945, a Disposition Board there made the following pertinent findings and recommendation:
16. After careful consideration of clinical records, laboratory findings and physical examination the Board finds the officer to have the following diagnoses), condition upon completion of case, and line of duty findings following each diagnosis: Arthritis, chronic, traumatic, moderate, secondary to fracture, os calcis, incurred in physical training, OCS, Miami Beach, Florida, LOD: No, as officer, LCD: Yes, as enlisted man. Unchanged.
17. Date of Origin of Incapacity: August 1942
18. Date Became Unfit for Duty: 6 July 1945
19. Is Cause of Incapacity Incident to Service: No
20. Existed prior to entry on active duty: Yes
21. Permanently aggravated by active duty: No
22. Maximum Hospital Benefit Received: Yes
*941 23. Is defect permanently incapacitating for general service: Yes
Degree of Disability for Military Service:
25. Partial
26. Permanent
Type of Service Recommended:
30. Limited military duty in bis M. O. S.
32. The Board recommends that: Captain Ralph Loeb, formerly classified in a limited service status, be returned to duty in a permanent limited service status but qualified for overseas service.
Attached to the findings and recommendations was a clinical summary concerning plaintiff, which was signed by two Army medical officers, both of whom served on the Disposition Board. This clinical summary indicated that plaintiff’s complaints were that he had had persistent pain in his right heel ever since the removal of the cast in October 1942. The examining doctors concluded with the statement therein that according to AR 40-105, Paragraph 49 (e), the plaintiff “has a disability which is cause for rejection.”
8. It was certified that no position vacancy existed for the plaintiff, and he was ordered to appear before an Army Retiring Board.
The Army Retiring Board, consisting of five officers including two from the Medical Corps, convened at Santa Ana Air Force Base, Santa Ana, California, on July 31, 1945, with plaintiff present and representing himself. All papers referred to the Board by The Adjutant General concerning plaintiff were read, including among others, those set forth in finding 7. Plaintiff testified that he desired to be relieved from active duty even if found able to perform limited service. He further stated that he had been able to discard his cane after assignment at Biggs Field, and “got along all right until five or six months after I was commissioned, when I developed arthritis in my right foot. I have been unable to run or walk without limping since then. I have continued to have arthritis since about July 1943.” The plaintiff contended during the proceedings that while the incapacity may have originated in his enlisted service, it was aggravated by his commissioned service.
Major Clarence T. Eckert, Medical Corps, and Captain Charles C. Marple, Medical Corps, were designated as the *942 medical examiners for the proceedings. They had conducted a final type retirement examination of the plaintiff on July 28, 1945. Major Eckert testified that plaintiff’s incapacity was arthritis secondary to the fracture of the heel bone in O. C. S. training in August 1942, and that plaintiff was incapacitated for active service, but capable of serving in a limited service status. He further testified that the plaintiff’s incapacity arose in August 1942, that the conditions which caused the plaintiff’s incapacity clearly and unmistakably existed prior to commissioned service, that it was permanent and incurable, that it had not been definitely and demonstrably aggravated by service, that the arthritis of the type suffered by the plaintiff was a common result of a fractured heel, that the plaintiff’s arthritic process started prior to his commission, and that his arthritis was the normal progression of the fracture, not an incident of nor aggravated by commissioned service. Captain Marple concurred in Major Eckert’s testimony.
9. At the conclusion of the evidence, the Army Betiring Board deliberated on the plaintiff’s case and found:
* * * that Captain Balph Loeb, 0572486, Air Corps, is incapacitated for active service; said incapacity is the result of an incident of service; the cause of said incapacity is: Arthritis, chronic, traumatic, moderate, secondary to fracture, os calcis, incurred in physical training, OCS, Miami Beach, Florida, August 1942; the cause of said incapacity is not an incident of service; said incapacity originated on or about July 1943; and said incapacity is permanent.
As admitted in the pleadings, the Board in effect found that plaintiff’s incapacity originated prior to his commissioned service, but was aggravated by such service.
When examined before the Board by the Becorder, Major Eckert was asked in succession the following questions: “Major Eckert, from your review of the records and knowledge of this case, do you think Captain Loeb is incapacitated for active service?” and “Is he capable of serving in a limited service status?” To both questions Major Eckert replied: “He is.” He was immediately asked what limitations should be placed upon Captain Loeb’s service, and he replied: “He should not do any severe physical exercise. All strenuous *943 physical work of any kind should be eliminated.” In evidence before the Board was the report of Major Eckert and Captain Marple on their final type examination of the plaintiff, and therein it was stated that plaintiff was not permanently incapacitated for active service, hut had physical requirements for permanent limited service. Major Eckert’s testimony before the Board, concurred in by Captain Marple, could reasonably be construed only to mean that plaintiff was permanently incapacitated for general service, but qualified for limited service.
It is to be noted that plaintiff appeared in person and was observed by this Board. Plaintiff testified before the Board:
I was commissioned January 20, 1943, and it was several months after that, around July, that I first noticed this arthritic pain that developed in my foot, ■and for a while then, I couldn’t even walk, and my foot .got all swollen. I was taken to the hospital and the medical officers said I had developed arthritis. I was sent to Beaumont General Hospital where I received therapy treatments, and took those treatments periodically for some time after that. I had many examinations and the diagnosis was always arthritis, but it never bothered me until several months after I was commissioned. I feel very definitely that the condition for which I am before this Board is not the fracture, but arthritis, which I developed several months after I was commissioned.
"When asked by plaintiff if the fracture of the heel bone must necessarily develop into arthritis, Major Eckert replied: “There is nothing that must necessarily develop. That is only my own opinion.” Major Eckert then reasserted his opinion that plaintiff’s arthritic process started before commissioned service, and further stated that it was impossible to say when arthritis set in, and symptoms thereof might not be apparent for a period of time after the onset. Captain Marple explained that plaintiff’s arthritis was not of the crippling type generally suffered by elderly people, but was an inflammation or irritation of the joint, resulting from a fracture.
The plaintiff further testified that while in commissioned service, he was required to stand reviews, serve as officer of the day, move about with the provost marshal, serve on line *944 of duty cases, and go on flying trips when he especially felt pain in his foot. He testified that his duties as legal officer definitely required him to be on his feet more than in the practice of law in civilian life. He stated that the arthritis became progressively worse, and that he felt definitely that it was aggravated by continued active service.
10. On August 1, 1945, an order was issued by the Commanding Officer, Santa Ana Army Air Base, stating that plaintiff:
* * * having been found incapacitated for active military service by an Army Retiring Board, this station, is released from active duty, effective 12 September 1945 * * *
On the same date, plaintiff was discharged from the hospital to return to his home at Denver, Colorado, on terminal leave.
11. On September 17,1945, the Office of The Surgeon General by letter to The Adjutant General, advised that it did not concur in the findings of the Army Retiring Board, and further stated in part as follows:
4. The record reveals that the incapacity actually originated in August 1942 at the time of the injury in which the officer sustained a fracture of the os calcis, inasmuch as the officer walked on crutches, i. e., was incapacitated, from that date until February 1943, after his entrance upon extended active duty as an officer. Furthermore, the arthritis named as the cause of the present incapacity, has developed as a normal progression of the sequelae of the fracture, according to the testimony of Major Eckert, a medical witness, and cannot be properly said to have originated subsequent to entrance upon EAD, and have been permanently aggravated by the service.
5. It is the opinion of this office that the board may well find that the incapacity originated prior to entrance upon EAD and that said incapacity has not been permanently aggravated by military service and therefore find that said incapacity is not the result of an incident of service as a commissioned officer.
6. Recommend that the record be returned to the board for reconsideration of its findings. The diagnosis should name the joint or joints involved in the arthritis.
12. By letter dated September 28, 1945, addressed to the plaintiff at Denver, Colorado, the Army Retiring Board advised plaintiff that it had been directed by The Adjutant *945 General to reconvene and reconsider “a portion of their findings, in view of the remarks of The Surgeon General”, that The Surgeon General was of the opinion that the arthritis, which constituted the basis of plaintiff’s incapacity, might well be a normal progression of the sequelae of the fracture and not permanent aggravation as found by the Board, and that the Board would reconvene on October 16, 1945, to reconsider its findings. It was stated that plaintiff would have to bear any expense incident to his appearance, and that plaintiff should advise as to whether or not he would be present or would waive his right to appear.
By letter dated October 5, 1945, plaintiff at Denver, Colorado, advised the Board at Santa Ana, California, as follows:
1. The undersigned has noted the contents of the basic communication, and in reference to paragraph 3 thereof, waives his right to appear before the reconvened board on 16 October 1945 because it is not desired to incur the expense incident to such appearance.
2. The undersigned again emphatically desires to maintain his assertions and statements made before the Retiring Board hearing on 31 July 1945 in reference to the fact that the arthritis was a permanent aggravation by service as found by the board. It is unequivocally felt that my arthritis did not occur and commense[sic] until July 1943, approximately 6 months after I was commissioned. At no time prior to that date did I ever have knowledge of or suffer from the effects of arthritis. After the condition of arthritis became known to me in July 1943 because of necessary hospitalization therefrom, I remained on active service, and it is felt that because of such service and the performance of necessary military duties for some considerable time thereafter, that the condition of arthritis from which I am suffering was immeasurably aggravated due to such service as a commissioned officer.
3. Because of the above conditions and the matters set forth in the board proceedings of 31 July 1945, it is requested that consideration and affirmance be given to the findings made by such board, that the incapacity is the result of an incident of service.
13. On October 16,1945, the Army Retiring Board reconvened at Santa Ana Army Air Base, Santa Ana, California, without plaintiff present, and reconsidered plaintiff’s case. *946 Of the five members of this reconvened Board, only one of the two medical officers and none of the others had served on the original Board. The only new evidence submitted was the testimony of Major Iredell M. Hinnant, M. C., as concurred in by Captain Alfred W. Erb, M. C. On the basis of hearing the reading of the medical records of the plaintiff to the reconvened Board, together with the letter of The Surgeon General and the record of proceedings of the original Board, and having previously reviewed this record, Major Hinnant stated his opinion that the plaintiff was “permanently incapacitated for active service”; that the plaintiff became permanently incapacitated in August 1942; that at that time plaintiff fractured his heel, and with a fracture of that type, unless complicated by arthritis, plaintiff should have recovered in two or three months; that plaintiff had continuous difficulty with his right heel and ankle, indicating that there was an active process going on continually from the time of the fracture until the spring of 1943, as evidenced by the fact that plaintiff continued to receive therapy until then and continued to use crutches until February 1943. Major Hinnant further testified that the process was continuous; that the cause was not an incident of commissioned service ; that the incapacity had not been definitely and demonstrably aggravated by commissioned service; that the incapacity was not curable within a reasonable length of time; and that further hospitalization was not indicated.
The proceedings lasted 25 minutes, including the deliberation of the Board, at the end of which time its findings were announced. The Board, two of the five members of which were medical officers, found that plaintiff was “permanently incapacitated for active service”, that the cause of incapacity was arthritis secondary to fracture of the right heel in August 1942; that the date of origin of the incapacitating defect and the date plaintiff became incapacitated for active service was August 1942; that the cause of such incapacity was not an incident of the service; that the cause of the incapacity had not been permanently aggravated by military service; and that the incapacity for active service was not the result of an incident of service.
*947 14. The parties agree that at the time of the proceedings •before the original and reconvened Army Retiring Board, the right of a non-regular officer of the Army of the United States to disability retirement pay was based on the Act of April 3,1939, 53 Stat. 557, as amended July 25,1939, 53 Stat. 1079,10 U. S. C. 456, and on the Act of September 21,1941, ■55 Stat. 734,38 U. S. C. 12.
Under the then current administrative interpretation of the Act of April 3,1939, the incapacity of a non-regular officer occurring during commissioned service as a result of a disability incurred in enlisted service was not deemed to be “in line of duty” as a commissioned officer. A different rule existed for a regular officer whose incapacity under like circumstances was regarded as a disability incident of his commissioned service, entitling him to disability retirement pay.
On December 29, 1950, the Assistant Secretary of the Air Force, by memorandum to the Chief of Staff, U. S. Air Force, changed the administrative interpretation so that the determination of line of duty status of non-regular Air Force officers would conform to the method authorized in cases of regular Air Force officers. The memorandum stated in part as follows:
My purpose in effecting this change is to rectify the inequitable precept which has resulted in the case of commissioned officers, warrant officers, and flight officers, who incurred injuries and disease while serving in a lower status, being denied the right of retirement in the officer status in which he became incapacitated. It is my intention that in cases where service has been continuous and where the cause of an individual disability originated during service in a warrant or enlisted capacity but where the actual incapacities occurred during commissioned or warrant service, that such incapacities shall be regarded as an incident of the officer’s service.
15. By letter to The Adjutant General dated November 13, 1945, The Surgeon General advised that the proceedings -of the original and reconvened Army Retiring Board concerning the plaintiff’s case had been carefully reviewed, and further stated as follows:
*948 2. This office concurs in the findings of the reconvened board 16 October 1945, to the effect that Captain Ralph Loeb is incapacitated for active service; that said incapacity is not the result of an incident of service; that the cause of said incapacity is Arthritis, chronic, traumatic, moderate, right ankle and heel, secondary tu fracture, right os calcis, incurred August 1942 in physical training, OCS, Miami Beach, Florida; that said incapacity is not the result of an incident of service^ incapacity originated in August 1942; and that said incapacity is permanent.
3. Physically unfit for limited service.
16. The Secretary of War approved the findings of the Army Retiring Board on November 20, 1945.
By letter dated November 20, 1945, The Adjutant General’s Office so advised the plaintiff and further stated in part as follows:
1. * * * It having been determined that your physical incapacity was not incurred in line of duty while on active duty as a commissioned officer you are not entitled to retirement pay benefits under the Act of 3 April 1939.
2. You are considered by the War Department to be permanently physically incapacitated for active military service.
3. If you have served over twenty years either in the Army, Navy, or Marine Corps, or in all, it is your privilege to reenlist in the permanent enlisted grade held by you prior to your entry on active duty as a commissioned officer under the provisions of AR 600-750, provided application for reenlistment is made within six months after termination of commissioned service. Having reenlisted you may then request retirement for physical disability under the Act of Congress approved 30 June 1941 (Section II, Ar 615-395) which will necessitate your appearance before an enlisted man’s retiring board at a hospital with retirement authority.
17. By letter dated December 10, 1948, the Director of Military Personnel advised plaintiff of action on his recent application, as follows:
2. Careful consideration has been given the matter of your appointment in the United States Air Force Reserve. However, as you have been found physically dis *949 qualified for such appointment, favorable action is precluded.
3. There is inclosed herewith notice of your appointment in the United States Air Force Honorary Reserve. Under this appointment you will be ineligible for consideration for extended active duty or- any type of reserve training, in time of peace. However, an honorary appointment enables an officer to continue his affiliation with the Reserve and to be considered for active duty, in the event of an emergency, should his services be needed.
4. In the event you desire this appointment it is requested that you complete the inclosed oath of office and return it direct to this Headquarters at your earliest convenience. In the event you do not desire this appointment, it is requested you furnish this headquarters with a signed declination of the appointment.
The record in this case does not show any further action by either party on the Honorary Reserve appointment.
18. By letter dated February 14, 1951, plaintiff wrote to the Director of Military Personnel, Headquarters, U. S. Air Force, and stated in part as follows:
It has always been my most serious contention that at all times herein mentioned, the permanent disability which I have as a result of arthritis occurred, in the line of duty, and was an incident of service while I was in the status of a commissioned officer. I feel definitely that my condition, to say the least, was aggravated by military service as a commissioned officer, and that the findings and orders first made by the retirement board, to the affect [sic] that my incapacity is the result of an incident of service as an officer, was correct, and should now be correct and proper.
Because of the above, I hereby respectfully request that a review be made of my case under Section 302 of the Service Mens Readjustment Act of 1944, or other applicable provisions, to the extent that retirement pay as an officer be granted me.
19. By letter dated March 19, 1951, the Office of the Director of Military Personnel advised plaintiff:
Action has been initiated to procure all pertinent records pertaining to your case, in order to properly present it to the Air Force Disability Review Board for reconsideration under the provisions of Section 302, Public Law 346 — 78th Congress, as amended.
*950 20. On a printed form supplied by the Director of Military Personnel, plaintiff under date of September 18, 1951, filed with the Department of the Air Force a docmnent with the printed heading: Application for Review of Department of the Air Force Retiring Board Proceedings. Under the item of error or inequity alleged to have occurred in the findings and decision of the Retiring Board, plaintiff stated as follows:
In my opinion, the findings and decision of the reconvened retiring board were inequitable and in error in finding that the cause of my incapacity was not an incident of service; that the cause of my incapacity had not been permanently aggravated by military service,, and that said incapacity for active service was not the result of an incident of service. The reconvened retiring board further erred in finding that my permanent incapacity developed in August, 1942, and not after my commission as an officer.
Under the item of corrective action requested, plaintiff stated as follows:
That my incapacity be found to be the result of an incident of service as an officer, and the cause of said incapacity be held to be permanently aggravated by military service.
The plaintiff also included a statement of the facts and circumstances of his commissioned service, stated that he was required to do considerable walking at the scenes and areas of criminal investigation and aircraft crashes, in drilling, marching, and performance of duties as officer of the day and officer of the guard, and contended these activities and duties “demonstrably and definitely permanently aggravated my incapacity”. He further contended that these facts and oircumstances, together with the fact that he had not noticed any symptom of arthritis until July 1943, proved that his disability was an “incident of service” as a commissioned officer.
Up to the time of his application for review, as stated in the supplement thereto, plaintiff had been engaged in full-time practice of law from January 1,1946.
Attached to the plaintiff’s supplement -were affidavits of two private physicians of Denver, Colorado, one of whom *951 had examined plaintiff to evaluate bis disability, and the other of whom had reviewed “the record” for the same purpose. They respectively concluded that the plaintiff’s arthritis (secondary to heel fracture) was aggravated by activity while on duty as an officer. Both of these affidavits became part of the record before the Air Force Disability Review Board.
No mention was made in the application about administrative interpretation of the Act of April 3,1939.
21. After due notice to plaintiff, the Air Force Disability Review Board convened at Washington, D. C., to hear plaintiff’s case on October 26, 1951, with the plaintiff not present but represented by counsel of the Disabled American Veterans, which attorney had been previously designated by plaintiff as his representative. The transcript of proceedings indicates that the Review Board had before it a complete record of the plaintiff’s case, including among others, records of the Veterans’ Administration as to an orthopedic examination conducted June 27, 1946; an X-ray examination, dated October 24, 1946; an orthopedic examination, dated January 14,1947; and treatment furnished on December 29, 1950.
The report of the V. A. examination of June 27,1946, is as follows:
Chief Complaints. — The patient states he cannot run because of pain in the right heel due to fracture of the right os calcis in August 1942. The foot becomes stiff and painful if he walks a lot or when the weather is bad. He states he can walk about one mile without appreciable difficulty. He soaks the foot in hot water nearly every morning and two or three times a week in the evening, especially when the weather is bad. Patient states that at times he has to limp quite a little and at other times he can walk without any limp.
Physical Examination. — Examinations reveal a well developed and fairly well nourished male who shows no abnormality in station or in gait. He double timed without appreciable difficulty or complaint. He is able to rise and walk on his toes, but this produces some pain on the lateral side of the foot. He is able to balance and walk on his heels without appreciable difficulty or *952 complaint. Complete orthopedic examination is entirely negative except for the right foot.
Dorsiflexion of the right foot is limited to about one-half normal limits. It is not appreciably painful. All other motions of the foot and ankle can be carried out to normal limits, but produce some pain especially in the lateral portion of the foot just below and anterior to the lateral malleolus. There is no tenderness in this area, but there is slight swelling of the soft tissue. There is some tenderness on the mid-plantar surface of the right heel. No redness, swelling, or deformity can be demonstrated in this area. There are no scars noted anywhere in this area.
Attention to X-Report attached.
Diagnosis ; Residuals of injury, old, os calcis, right.
The attached sheet showed interpretation of X-ray of plaintiff’s right foot, as follows:
BOTH FEET: (WITH SPECIAL VIEW OF OS CALCIS) A. P. and oblique views reveal no definite x-ray evidence of fracture, dislocation, bone or joint pathology except the joint space between the talus and calcaneus is somewhat indistinct, and there is increased calcification in the adjacent bone.
impRession : Old injury of right calcaneus.
The report of orthopedic examination, dated January 14, 1947, recorded that plaintiff complained that his right heel had become more painful in the past six months; that he walked without showing abnormality in gait; that he could •execute all exercise tolerance tests, but when he attempted to balance and walk on his heels, he experienced a sharp pain in the region of his os calcis which radiated up the posterior aspect of the ankle; that there was no swelling or atrophy, limitation of motion, or an inflammatory change noted in any musclo-skeletal structure; and that with the plaintiff in the recumbent position, either of his lower extremities could be actively and passively manipulated through the normal range of motion without causing any apparent pain or discomfort. The attached X-ray report stated the findings of the roent-genologist to be negative as to the right os calcis, and that •there was no evidence of recent or old injury.
*953 The report of X-ray examination of October 24,1946, was-concerning a retake of a previous chest X-ray, and was obviously of no probative value in the plaintiff’s case before the-Review Board.
The last of the Y. A. records in evidence before the Review-Board was dated December 29,1950, and recorded that plaintiff had complained that for the preceding period of ten days-he had experienced pain and swelling in his right foot, that he had “some traumatic arthritis”; that there was mild, ecchymosis [discoloration] around the medial aspect of the-right ankle, with minimal swelling present; that the ankle motion was normal, hut plaintiff walked with a slight limp. The diagnosis was a sprained ankle, and the treatment indicated as application of an Ace bandage.
22. At the opening of the Review Board proceedings, the1 Recorder made the following statement:
The matter under review is indicated in par. 1 of the Examiner’s report and includes the findings of (a) an Army Retiring Board convened at Santa Ana AFB, California, on 31 July 1949, and (b) the subsequent administrative action as indicated in par. lb of the Examiner’s report. The Recorder will present to the Board a summary of the retiring board proceedings now under-review and the pertinent facts of the case as disclosed by departmental records.
The applicant in this case contends that his disability was incurred in commissioned service and/or aggravated', in commissioned service, and that he is permanently incapacitated.
The Recorder then explained the record before the Board,, after which plaintiff’s counsel presented oral arguments, in conclusion of which he made the following statements:
* * * Counsel firmly believes that a reasonable doubt exists as to whether the disability was permanently aggravated by the applicant’s commissioned service. Attention is respectfully invited to the statements made by the applicant on his application for review and his-accompanying statement, and particular attention is invited to the two statements from eminent private-physicians submitted by the applicant, in which competent medical opinions are rendered with regard to the* possibilities of the applicant’s disability being permanently aggravated by his duties as a commissioned officer..
*954 I would like at this time to read the statement made by the applicant, which accompanies his application for review, which is contained on pages 1,2 and 3 (reading). He then brings attention to the private physician’s statement previously referred to. There is no question as to the incapacity of the applicant in view of the findings of permanent incapacitation by four medical witnesses in two Army Retiring Board proceedings, two Surgeon General’s opinions, and finally approval by the Secretary of the Army, and the fact that the condition at the present time is the same as it was during service, and in fact it appears that it has grown progressively worse.
We believe that reasonable doubt should be granted in the applicant’s favor by a finding that the permanently incapacitating disability was permanently aggravated by commissioned service. If a finding is made by the Board that the permanently incapacitating disability was not permanently aggravated during commissioned service, it is then respectfully requested that consideration be given to granting retirement benefits on the basis of the Secretary of the Air Force’s liberal interpretation of retirement regulations to the effect that if a disability occurs during the enlisted status and subsequently causes permanent incapacitation during commissioned service, the subject applicant will then be entitled to retirement benefits.
The Review Board then adjourned to meet at the call of its president, pending re-examination of plaintiff and reevaluation of his disability.
23. By letter dated November 13,1951, the Disability Retirement Branch, Director of Military Personnel, wrote plaintiff as follows:
1. Tour case is being considered by the Air Force Disability Review Board, in accordance with your application for such review.
2. In this connection, it is requested that you advise this Headquarters, Director of Military Personnel, Washington 25, D. C., Attention: Promotions and Separations Division, if you wish to volunteer to appear in person at Fitzsimons Army Hospital, Denver, Colorado for a special orthopedic examination and evaluation, including x-rays of right ankle and foot for evidence of disease and/or disability resulting from fracture of os calcis in August 1942. Appearance before a Medical Board is Not desired.
*955 3. Your case will be held in abeyance pending receipt of your reply.
Plaintiff by letter dated November 20,1951, acknowledged receipt of the foregoing letter, and stated:
. In accordance with Paragraph 2 thereof, it is my desire to volunteer to appear in person at Fitzsimons Army Hospital, Denver, Colorado, for such examination as stated in said Paragraph 2. It is my further desire to cooperate in any other manner proposed and thought helpful by the Beview Board.
He requested advice as to when he was to report to the hospital and further stated:
Attention is respectfully called to the fact that the original Ketiring Board and the reconvened Betiring Board in my case, and subsequently the Adjutant General all found and considered me to be permanently physically incapacitated.
24. At times between December 20, 1951, and January 2, 1952, plaintiff appeared at Fitzsimons Army Hospital for physical examination.
On January 15, 1952, the Air Force Disability Beview Board reconvened “to continue the review of the case in the light of the additional evidence received since 26 October 1951.” In addition to the correspondence concerning plaintiff’s physical re-examination, the additional evidence before the Board consisted of records from Fitzsimons Army Hospital of the re-examination of plaintiff, as follows:
(1) A consultation sheet signed by Keith A, Walker, Major, M. C., dated December 21,1951, which states in pertinent part:
PRESENT history : Patient is now a Lawyer, engaging in active practice. Has pain in the region of the right sub-astragular joint much of the time. This occurs at rest but is aggravated by activity, and patient states that pain prevents him from walking more than a few blocks at a single time. He is at present wearing the arch supports which give him some relief; he is also using local home applications of heat and massage in the area with some relief from pain. Patient states that he feels pain has become more marked over the past several years, being more severe at the present than it was previously.
*956 physical EXAMINATION: Reveals a slight white male,, who walks with a limp in the right lower extremity. Examination of the foot and leg reveals no evidence of muscle atrophy in either the right leg or foot. There is-a full and normal active range of motion with plantar flexion of 135 degrees and dorsiflexion to 80 degrees, bilaterally. There is slight inversion of the heel of the-right foot, as compared with the left, and some thickening through the right os calcis, as compared with the left. There is tenderness both medially and laterally along the course of the subastragular joint, and there is limitation of motion in the right subastragular joint with pain precipitated by the motion. The ankle joint is stable- and painless as are the tarsal and metatarsal joints.There is no impairment of muscle function and circulation of the foot is adequate. There are no atrophic-changes in the foot and sensation is normal.
(2) a radiographic report of an X-ray film, dated December 20,1951, as follows:
both os calcis. — The left appears normal. The right is .under exposed on the lateral view but there does appear to have been an old fracture anteriorly. The Patient was-asked to be returned but has not returned to date for re-examination.
and (3) a radiographic report of an X-ray film, dated January 2, 1952, as follows:
both ossa calcis. — As previously described, there has apparently been a fracture of the os calcis anteriorly and there is some irregularity of the trabeculae of the right os calcis as seen on the axiel view. Lateral views of the talocalcaneal joint reveal that there is minimal osteoar-thritic changes present and some sclerosis of the adjacent articular surfaces posteriorly.
, Also in evidence was a letter dated January 14, 1952, to the Board from plaintiff’s attorney, counsel of the Disabled American Veterans, in which reference was made to the above-mentioned radiographic reports, and further statements were made as follows:
The new evidence, coupled with the medical evidence submitted by the applicant and all the service clinical records, conclusively show without a doubt that the applicant was and still is permanently incapacitated to perform general military service. The preponderance of medical evidence bears out the findings of four medi *957 cal witnesses wbo testified before two Army Retirement Boards; two opinions from the office of the Snrgeon General, all of these findings finally approved by the Secretary of the Army to the effect that the applicant was permanently incapacitated at the time of his separation from the service. It is respectfully requested that the remarks made by this counsel before the Board on 26 October 1951 be made part of this presentation by reference.
On the basis of these facts, it is respectfully requested that consideration be given to granting a finding of permanent incapacitation and to the finding of entitlement to physical disability retirement pay by way of either permanent aggravation during commissioned service or by way of application of the Secretary of the Air Force’s liberal interpretation of the retirement statutes.
As shown by the transcript of the Board’s proceedings on reconvening, the plaintiff was not present and not represented by counsel who had waived his right to appear. In the course of its discussion the Board considered (1) that the reconvened Army Retiring Board found plaintiff incapacitated for active service but that the disability was not an incident of the service; (2) that the purpose of the Review Board was to determine plaintiff’s eligibility to receive retirement benefits when considered under the new administrative interpretation of the Act of April 3,1939; and (3) that there was no record that plaintiff was accepted as physically qualified when he entered upon commissioned service, but it could -be assumed that everyone concerned was optimistic about “the eventual healing of the fracture” and deemed it best to disregard it; that limited service was recommended by a Final Disposition Board on July 17, 1945; and that due to lack of position vacancies, an Army Retiring Board was convened July 31, 1945, and reconvened October 16, 1945, and in the meantime, plaintiff was released from active duty on September 12,1945.
Further discussion by the Board is summarized in the transcript of its proceedings, as follows:
The condition present upon separation was the residual of the injury incurred in August 1942. The fracture was healed. The arthritic changes are a direct result of the injury. Symptoms were discomfort or pain on ex *958 tended walking or weight-bearing. There were no gross deformities or limitations of motion resulting.
Member has been seen by the Veterans Administration several times since 1946. The findings have not materially changed. Alleged symptoms are variable. He has been awarded 10% disability. The Air Force Disability Review Board requested reexamination, which was done in December 1950 and January 1951. This report did not reveal new information but was in line with records and information already available.
4. After careful review of the records in this case, it is the opinion of the Air Force Disability Review Board that the physical defect of this former officer originated while member was in enlisted status; that officer’s enlisted and commissioned service was continuous and therefore the physical defect should be considered as an incident of active service under the new administrative interpretation of PL 18, 76th Congress, mentioned above.
Further it is the opinion of the Board that member has a permanent defect, but that it is not of sufficient severity to be considered presently incapacitating for military service.
25. Following its discussion, the Air Force Disability Review Board made and entered its written findings and conclusions, as follows:
After careful deliberation, the Air Force Disability Review Board finds:
a. That Capt Ralph Loeb, AO 572436, AC, is not permanently incapacitated for active service.
b. That the administrative action of the Secretary of War. on 20 November 1945, in approving the findings of the Army Retiring Board of 16 October 1945, should be REVERSED.
CONCLUSIONS
That the former officer is not entitled to be certified for retirement pay benefits.
26. By letter dated February 18,1952, the Secretary of the Air Force advised plaintiff of the findings and conclusions of the Air Force Disability Review Board, and stated that it was further determined “that the administrative action of the Secretary of War on 20 November 1945 in approving the finds [sic] of the Air Review Board of 16 October 1945, should be reversed.”
*959 27. On December 11, 1952, plaintiff filed with the Air Force Board for Correction of Military Becords an application for correction of record to show that he was permanently incapacitated for active service at the time of his separation and entitled to retirement pay. On August 25, 1953, the plaintiff’s application was denied on the ground that “a careful consideration of your military record, together with such facts as have been presented by you, fail to establish a sufficient basis for a hearing of your case by this Board.” The plaintiff was so advised by letter, and it was further stated that in the absence of additional material evidence, no further action on the application was contemplated.
28. It was agreed by the parties in the pretrial hearing in this case, as follows:
In the event the Court decides that plaintiff is entitled to recover retirement pay for any period of time, defendant may, without limitation as to any other offset it may have, set off against such retirement pay all disability compensation for such period paid to plaintiff by the Veterans Administration, as well as any mustering-out pay received by plaintiff. If plaintiff is entitled to recover in this action, the entry of final Judgment by the Court may await the exact computation by the General Accounting Office of retirement pay due plaintiff and of disability compensation payments made to plaintiff, such computation to be in accordance with the Court’s opinion and decision in this case.
29. The plaintiff filed his petition herein on July 1, 1952.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover.
Entry of judgment is suspended pending the filing of a report by the General Accounting Office showing the exact amount due plaintiff in accordance with the foregoing opinion.
In accordance with the opinion of the court and on a report by the General Accounting Office showing the amount *960 due thereunder, it was ordered June 5, 1956, that judgment for the plaintiff be entered for $20,847.35.