### William L. SCHIFFMAN
### v.
### The UNITED STATES.
#### No. 548–59.

United States Court of Claims.
July 12, 1963.

---

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger, Harmel & Schuchat, Washington, D. C., were on the briefs.

Katherine H. Johnson, Alexandria, Va., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.

Plaintiff was released from active duty with the Army on June 14, 1946, in apparent good health. When released, he had the option of taking $300 mustering out pay or a "terminal leave promotion" to major under War Department Circular No. 10, of January 11, 1946. Plaintiff qualified for the terminal leave promotion —24 months in grade and an efficiency index of 40—but chose the mustering out pay.

In August 1940 plaintiff was hospitalized because of a large herniated disc. Surgery did not cure plaintiff and on April 7, 1949, he appeared before an Army Retiring Board at Walter Reed. The Board determined that Captain Schiffman had incurred a herniated nucleus pulposus in line of duty and that he became permanently incapacitated for active service in February 1945. The Secretary of the Army approved these findings on May 9, 1949, and certified plaintiff as eligible for disability retirement pay, based on the rank of captain, from the date of his release from active duty in June 1946.

The Mustering-Out Payment Act of 1944 [1] provided that no payment should

---

1. 58 Stat. 8, § 1(b) (2), (1944), 38 U.S.C. § 691a(b) (2) (1946 ed.).

be made to any member eligible for retirement pay at the time of his release from active duty. Since plaintiff was in fact disabled when he was released, he would not have received the mustering out pay had the Army known his true condition.

In May 1953 plaintiff requested the Army Board for the Correction of Military Records to correct his records to reflect the terminal leave promotion from captain to major. The Correction Board notified plaintiff on December 30, 1953, that his request was denied. The Board thought that the law and regulations did not afford him a chance to rescind his choice, even though the findings of the 1949 Retirement Board showed that he was not qualified for the mustering out pay because of his disability. Finally, the Board found no evidence of error or injustice.

In the meantime, on October 13, 1953, the Secretary of the Army changed the Army's policy with reference to payment of retroactive benefits in terminal leave promotion cases to conform to Air Force's policy. The Air Force took into account errors in waiving the promotion and authorized payment at the higher grade, retroactive to the date on which the terminal leave promotion would have become effective except for an administrative error. The new policy was held in abeyance until a test case was decided by the Comptroller General. The Opinion, No. B–116091, February 5, 1954, completely upheld the Army's policy, which was then implemented on March 9, 1954, by a determination that certain classes of officers were entitled to have their claims reconsidered.

Plaintiff was in the class that had been given no relief, although the officers were qualified for the promotion by time in grade and efficiency index. He asked for reconsideration by the Board on June 1, 1954. And on September 2, 1954, the Board sent a memorandum to the Secretary of the Army, recommending that plaintiff's and similar cases be reconsidered. The memorandum stated, *inter alia:*

"5. The pertinent point in all of these cases is that the applicants did' not know whether or not they would' be retired for physical disability, and therefore declined their promotion to accept the MOP [mustering out pay.] Had they known that they would be retired for disability, it is inconceivable * * * that they would have declined promotions and thereby forfeited their right to a higher amount of retirement pay to accept the $300 MOP.

"6. It is felt further that had applicant's case and all similarly rejected cases been considered subsequent to the implementation of the Secretary's policy of 13 October 1953, the final decision thereon might have been different."

This memorandum was submitted through General McNeil, Special Assistant to the Secretary. The General recommended an adverse decision. The Secretary concurred, and on October 7, 1954, plaintiff was so advised.

Plaintiff was given no reason for the adverse decision. The denial is difficult to understand in light of the memorandum dated March 9, 1954, by General McNeil addressed to the Department Counselor, implementing the new policy. The memorandum contained such statements as:

" * * * I recommend that we now process all terminal leave promotion cases in accord with the Secretary's declaration of policy.

* * * * * *

"Action now will have to be from the date of eligibility for promotion.

* * * * * *

"In other cases ABCMR has corrected the records to show entitlement to promotion but has made no finding as to pay. As to these cases, a paragraph may be added to the Secretary's directive ordering pay from date of eligibility in accord with the present policy.

"Approval of the foregoing will permit prompt disposal of all termi-

nal leave cases estimated at around eighty."

The Army was still not finished with Captain Schiffman. Pursuant to statute, the Army sent him a letter, dated August 1, 1960, reading in part as follows:

"2. At the time of your discharge 14 June 1946 you were paid $300.00 mustering-out pay. The findings of the Army Retiring Board, as approved by the Secretary of the Army, subsequently established entitlement to the disability retirement pay effective 15 June 1946. This action voided entitlement to mustering out pay."

Plaintiff duly refunded the $300.

He now sues for the difference between captain's and major's retirement pay from June 15, 1946, the day after his release from active duty. He claims he should have been given the terminal leave promotion, retroactively, under the Army's policy implemented March 9, 1954. He further claims that the Secretary's action in denying his request was arbitrary

## I

██ On these facts, says defendant, the claim is barred by our six year statute of limitations. 28 U.S.C. § 2501 (1958). This contention is bottomed on Lipp v. United States, Ct.Cl., 301 F.2d 674, which held that the statute was not tolled while the petitioner sought administrative review by the Army Board for Correction of Military Records. There is no question but that Lipp correctly states the general rule, viz., that the statute is not tolled while permissive administrative remedies are sought. See, e. g., Friedman v. United States, Ct. Cl., 310 F.2d 381, and Rosnick v. United States, 129 F.Supp. 958, 132 Ct.Cl. 1 (1955). Rosnick held that the cause of action accrued when "plaintiff was relieved from active duty on May 26, 1946, without retirement pay." Rosnick had had several reviews of his case, the last of which was before the Army's Board for Correction of Military Records on January 13, 1954. The court held that the cause of action did not accrue on this date, saying:

"* * * It is difficult to see how a cause of action could arise or be renewed by adverse findings, all of which were based on conditions that existed more than six years prior to the action which was alleged as a basis for the new cause of action." [Id., 129 F.Supp. at p. 959, 132 Ct.Cl. at p. 4.]

██ Appeal to the Correction Board is not, of course, a necessary prerequisite to an action here. This court has often held that where a "proper board has acted *finally* the running of the statute is not tolled by later consideration by other boards or agencies." Friedman v. United States, supra, 310 F.2d at p. 390, and see cases cited therein.

Friedman teaches the danger—in the complex area of military pay cases—of deciding particular cases by application of general language in decisions such as Lipp. In the case at bar we think the operative facts put it in the category of cases headed by Capps v. United States, 137 F.Supp. 721, 133 Ct.Cl. 811 (1956), and not in the category headed by Lipp.

Capps was an officer retired without pay on May 8, 1944, for incapacity from hypertrophic arthritis. The arthritis originated in 1941 while plaintiff was an enlisted man. The Retiring Board held that his incapacity was not "the result of an incident of service." Id., 137 F.Supp. at p. 722, 133 Ct.Cl. at pp. 812–813. The Board's decision was approved by the Secretary of War and the President. "This holding was required by an Army regulation holding that a reserve officer was not entitled to be retired for physical disability which had originated during the time he had served as an enlisted man." Id., 137 F.Supp. at p. 722, 133 Ct.Cl. at p. 813. On August 3, 1950, the Secretary of the Army "reversed his previous ruling that a reserve Army Officer was not entitled to be retired with pay on account of an injury sustained during his service as an enlisted man." Ibid. Plaintiff was notified

of his right for a reconsideration of his case by the Army Disability Review Board. He applied, and on June 1, 1951—after numerous adjournments to gather more evidence—the Board reversed its earlier ruling that the arthritis originated while plaintiff was an enlisted man and "held that 'the date of origin of the incapacitating defect was prior to entrance into military service,' that is, prior even to his enlisted service." Id., 137 F.Supp. at p. 723, 133 Ct.Cl. at pp. 813–814. According to the court's analysis, the Retirement Board's finding was not final, "because it was contrary to law, as the Secretary of War later determined." Id., 137 F.Supp. at p. 724, 133 Ct.Cl. at p. 814. The effect of the Secretary's action was to apply different law to Capps' case, the facts of which had been determined back in 1944. Defendant of course raised the limitations defense. The court rejected this defense on the ground that the Board's original action was deprived of finality when the Secretary announced a new policy with respect to officers like plaintiff.

On the question of when the cause of action accrued, the court said:

> "The suggestion of the Secretary of War that plaintiff's case be reopened shows he was not through with it. He did not get through with it, as it finally turned out, until the second decision of the Disability Review Board on June 1, 1951, and his approval of its action. *It was then that our jurisdiction began.* Plaintiff's action was brought within six years from this time." [Id., 137 F.Supp. at p. 725, 133 Ct.Cl. at p. 816. Emphasis added.]

The facts in the case at bar are sufficiently parallel to those in Capps to bring it within the category of cases where

> " * * * the court has held that the final action of the first board to decide has been delayed or deferred by one or another circumstance and therefore that the cause of action has not accrued until the later time." [Friedman v. United States, supra, 310 F.2d at p. 391.]

On December 30, 1953, the Army's Correction Board denied Captain Schiffman's application to have his records corrected to show a terminal leave promotion from captain to major. In the meantime, on October 13, 1953, the Secretary of the Army had changed the Army's policy with reference to payment of retroactive benefits in terminal leave promotion cases to conform to that of the Air Force, which authorized payment at the higher grade retroactive to the date on which the terminal leave promotion would have become effective but for administrative error. Implementation of this policy was delayed, however, until a test case was submitted to the Comptroller General. The opinion, referred to by the parties as the Baltzell case, was announced February 5, 1954; and the Secretary's new policy was implemented on March 9, 1954, by a determination that applicants to the Correction Board were entitled to have their terminal leave promotion claims reconsidered if relief had been denied in whole or in part. As a result of the Secretary's new policy, plaintiff on June 1, 1954, asked the Correction Board to reconsider his case. The Board recommended favorable action. But the Secretary denied the request, and plaintiff was so advised by the Board on October 7, 1954, less than six years prior to the filing of the petition in the case.

Here, as in Capps, supra, the Secretary took a new view of the law and announced that all officers affected by his new policy would have a chance to have their cases reconsidered by the Correction Board. The Secretary's pronouncement deprived the Board action of December 30, 1953, of "finality." The last and "final" decision of the Board, therefore, is October 7, 1954, the date when it denied plaintiff's request for correction of his records in light of the new policy. And as was said in Capps, supra, 137 F.Supp. at p. 725, 133 Ct.Cl. at p. 816, "It was then that our jurisdiction began." Plaintiff's petition was filed December 29, 1959, well within the six year period allowed by 28 U.S.C. § 2501 (1958). See also

Friedman, supra, 310 F.2d 391; Loeb v. United States, 133 Ct.Cl. 937 (1956) (decided on the basis of Capps, supra); and Suter v. United States, 153 F.Supp. 367, 139 Ct.Cl. 466 (1957), cert. denied, 355 U.S. 926, 78 S.Ct. 383, 2 L.Ed.2d 356 (1958).

## II

The threshold question in considering plaintiff's case on the merits is this: Had he chosen the terminal leave promotion to major, and had he been retired for disability when released from active duty in June 1946, would his retirement have been in the rank of major or captain?

The Army announced its new policy on October 13, 1953. In November 1953, it submitted the Baltzell case to the Comptroller General to test this policy. And as soon as the Comptroller General rendered his opinion, the Army implemented the new policy. Baltzell was released from active duty on December 25, 1945, with the rank of lieutenant colonel. Then on March 23, 1953, the Correction Board corrected his records to show (1) that he was released from active duty by reason of physical disability on December 25, 1945, and certified, effective as of December 26, 1945, for retirement benefits, and (2) that he was promoted to colonel as of December 25, 1945. The Comptroller General ruled that Colonel Baltzell's widow was entitled to receive the retirement pay benefits from December 26, 1945, computed on the grade of colonel, since that was the actual rank held by him at the time of his retirement. The Baltzell opinion is straightforward and logical, and apparently assured the Army of the legality of effecting terminal leave promotions retroactively.

Plaintiff relies heavily on Caddington v. United States, 178 F.Supp. 604, 147 Ct.Cl. 629 (1960), which held that an officer should have been promoted to colonel before he was released from active duty for physical disability September 17, 1945. In this case, the Terminal Leave Policy was announced on December 13, 1945, some three months after Caddington was retired. On March 1, 1956, how-

ever, he applied to the Correction Board, "requesting that his records be corrected to reflect 'promotion to full colonel under terminal leave promotion policy which was established Dec. 13, '45 if not otherwise eligible.'" Id., 178 F.Supp. at p. 605, 147 Ct.Cl. at p. 630. The Board corrected his records to show the promotion as of December 13, 1945, but stated that no monetary benefits were to attach. The Secretary concurred with the Board. Plaintiff then sued in this court, which found that plaintiff *was* "otherwise eligible" for promotion to colonel. That is, he was eligible independent of the terminal leave promotion policy because he had been recommended for promotion while still on active duty and undoubtedly would have been promoted but for the loss of all his records "while he was serving in the South Sea Islands of the Pacific." Id., 178 F.Supp. at p. 606, 147 Ct. Cl. at p. 632. The court pointed out that it was unnecessary "to decide the issue solely on the question of whether plaintiff's recovery is dependent upon the promotion policy dated December 13, 1945."

Plaintiff says Caddington clearly implies that the court would have awarded judgment for disability pay based on the higher rank of a terminal leave promotion to colonel had this policy been in effect when Caddington was released from active duty. The implication may be there; however, it is not an implied holding.

■ Had plaintiff known he was going to be retired for physical disability, he undoubtedly would have accepted the terminal leave promotion to major. 56 Stat. 787 (1942) states, in part:

"That every officer of the Army of the United States, or any component thereof, promoted to a higher grade at any time after December 7, 1941, shall be deemed *for all purposes* to have accepted his promotion to higher grade upon the date of the order announcing it unless he shall expressly decline such promotion, and shall receive the pay and allowances

of the higher grade from such date * * *." [Emphasis added.]

"For all purposes" would seem to include retirement benefits commensurate with the rank to which an officer is promoted. There is nothing in War Department Circular No. 10 of January 11, 1946, indicating that the terminal leave promotion brought the officer higher pay only for his short remaining period of active duty, and after that was in the nature of a merit badge if the officer happened to be retired for disability.

Defendant points to no statute or regulation which would deprive an officer with a terminal leave promotion of the full monetary benefits of his rank simply because he was injured in the service of his country and retired for disability. And in view of this court's pronouncements on the emoluments of rank, we do not feel constrained to limit the phrase "for all purposes" in the above quoted statute.[2] See Darby v. United States, 173 F.Supp. 619, 146 Ct.Cl. 211, 216 (1959). The Secretary's qualification of the new policy is especially difficult to explain, considering that the policy drew support from the Baltzell opinion, which stated:

> " * * * Such correction of * * * [Baltzell's] military records is required to be viewed * * * as establishing that he met *all the statutory conditions* entitling him to active duty pay and allowances as a colonel * * * and to receive retirement pay benefits * * * " [Emphasis added.]

The Comptroller's opinion seems to be in harmony with this court's interpretation of "for all purposes" as expressed in Darby v. United States, supra, 173 F.Supp. at p. 621, 146 Ct.Cl. at p. 216. Certainly the fact situation is indistinguishable from the one in the present case—with one exception: Captain Schiffman had *turned down* his promotion in favor of $300 mustering out pay. The Correction Board in its first denial of the claim apparently considered it unsportsmanlike for plaintiff first to accept $300 and then to ask for a promotion when he found out he had been disabled while in the war. The Board's findings of November 30, 1953, contained the concluding remarks as follows:

> " * * * and inasmuch as he rejected terminal leave promotion to the grade of Major in favor of mustering out pay, no evidence of error or injustice is found."

■ Whatever the Board or the Secretary of the Army may have thought of this reasoning it does not make the denial of plaintiff's claim any less arbitrary. Captain Schiffman did not know he was disabled when released from active duty, nor did the Army's mustering out physical examination reveal this disability. His choice of mustering out pay in lieu of a promotion was logical, as well as honorable. As he stated before the Correction Board,

> "I was anxious to take advantage of any legitimate benefits that might be due me, and, therefore, decided on

2. "To acknowledge plaintiff's right to a promotion and at the same time to deprive him of one of the principal benefits of the promotion cannot truly be viewed as such action as would remove an injustice. We think that to confer on plaintiff a fitting recognition of the reward earned by him during months of valiant service, more than a promotion in name only is required. An action which is designed to remove an injustice or correct an error, as this one must have been under the statutory enactments, should include every essential benefit." [Caddington v. United States, 178 F.Supp. 604, 147 Ct.Cl. 629, 633 (1960).] * * * "Certainly getting the same pay for an equal amount of knowledge, training and service is as important to an officer in the Army as to a person occupying a civilian position. To say otherwise would be to say that the emoluments of office are unimportant to a man in the military. This we cannot conceive. One cannot eat or put in the bank the glitter and glory that goes hand-in-hand with an officer of the Army. Officers like civilians have their future and families to think of and the pay commensurate to their station is of the greatest personal importance to the soldier." [Darby v. United States, supra, 173 F.Supp. at p. 621, 146 Ct.Cl. at p. 216.]

* * * [that basis] not to accept the majority."

We do not think plaintiff's choosing the mustering out pay prejudiced his request to have his records corrected. In Uhley v. United States, 121 F.Supp. 674, 128 Ct.Cl. 608 (1954), the officer was in fact permanently disabled, but "was informed by medical officers of the Air Force that his disabilities were not sufficient to make him eligible for retirement and he was released not for physical disability." Id., 121 F.Supp. at p. 675, 128 Ct.Cl. at p. 609. When Uhley's condition did not improve he sought a hearing before a retiring board. He was told that "under a ruling of the Comptroller General a retiring board would have no jurisdiction to entertain such an application because plaintiff had been released not for physical disability." Id., 121 F.Supp. at 676, 128 Ct.Cl. at p. 610. This court held that plaintiff was not bound by his decision to leave the service without first determining his physical fitness.

We do not think that Captain Schiffman's acceptance of the $300 without knowledge of his existing disability should have deprived him of the right to have his records corrected by the Board. In view of what we have said, the Secretary's denial of plaintiff's request to have his records corrected to show his promotion to major and to entitlement to the pay and allowances, including retirement pay, was arbitrary.

Plaintiff is, therefore, entitled to judgment for the additional retirement pay he would have received had he accepted his terminal leave promotion to major when he was first eligible in June 1946. Allin v. United States, 147 Ct.Cl. 459, 466 (1959); Friedman v. United States, 158 F.Supp. 364, 141 Ct.Cl. 239, 259 (1958); Suter v. United States, 153 F.Supp. 367, 139 Ct.Cl. 466 (1957), cert. denied, 355 U.S. 926, 78 S.Ct. 383, 2 L.Ed.2d 356 (1958); Capps v. United States, 137 F.Supp. 721, 133 Ct.Cl. 811, 815 (1956). The amount of plaintiff's recovery will be determined pursuant to Rule 38(c).