**Eli Jah AUBRE, (fka) Frank Leslie Brunault, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–363C.

United States Court of Federal Claims.

Feb. 20, 1998.

---

Brian C. Paul, Agawam, MA, for plaintiff.

Kathie Ann Whipple, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lt. Geoffrey M. Coan, Office of the Judge Advocate General, of counsel.

## OPINION

MILLER, Judge.

This military pay case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1) for failure to file a claim within the applicable six-year statute of limitations. Defendant alternatively moved for judgment on the administrative record pursuant to RCFC 56.1, and plaintiff cross-moved. The issue to be decided is whether plaintiff, discharged in 1968, is entitled to a correction of his military record to indicate a disability discharge based on newly discovered evidence of service-connected trauma. After plaintiff was given an opportunity to file a supplemental brief, the court deems argument to be unnecessary.

1. Prior to March 18, 1980, plaintiff was known as Frank Leslie Brunault.

## FACTS

The facts are drawn from the administrative record. On November 17, 1966, Eli Jah Aubre[1] ("plaintiff") enlisted in the United States Naval Reserves. Approximately 13 months later, on December 4, 1967, plaintiff began what was to be a six-year term of active duty service. After completing training as a hospital corpsman, plaintiff was stationed aboard the U.S.S. Wasp, where he served from April 4, 1968, through August 1968.

While he was on leave, in July 1968, plaintiff's wife suffered a serious injury that effectively disabled her. As a result plaintiff requested a transfer that would preclude him from being sent overseas and would allow him to be closer to his injured wife. Although plaintiff received a transfer, it was not what he had anticipated; the Navy transferred plaintiff to a destroyer, the U.S.S. Robert L. Wilson (the "U.S.S. Wilson"), which was being sent to Vietnam. Although plaintiff was to serve as a hospital corpsman while on board the U.S.S. Wilson, he claims that he was unqualified for this position because he was not a First Class Corpsman and had not completed Independent Duty School.

In concert with three other destroyers, the U.S.S. Wilson departed for Vietnam in early September 1968. On September 7, 1968, off the coast of South Carolina, a fire and explosion occurred on board the U.S.S. Douglas H. Fox (the "U.S.S. Fox"), killing three crew members and injuring five others. As soon as the fire broke out, the other ships sent immediate medical assistance. According to the U.S.S. Wilson's logs, plaintiff was not among the crew members who were sent to the U.S.S. Fox to render emergency assistance. Plaintiff disputes the log entries and contends that he did board the U.S.S. Fox and rendered unsupervised medical assistance to numerous injured crewmen. Furthermore, plaintiff asserts that, because of his lack of training, the medical assistance he provided directly resulted in the deaths of certain crewmen.[2]

2. Plaintiff alleges that immediately after arriving on board the U.S.S. Fox, he administered mor-

When his ship reached the Panama Canal, plaintiff received an honorable discharge from the United States Navy (the "Navy") on September 24, 1968, for hardship reasons associated with his injured wife. Although plaintiff's pre-September 24, 1968 service record indicated three incidents on which he complained of "nervousness,"[3] no mention is made of any mental illness. Moreover, although plaintiff disputes this fact, his records reveal that the Navy conducted a military separation physical exam on September 17, 1968. During this examination plaintiff was asked to inform the attending physician of any problems that he thought were relevant. Plaintiff did not mention, and the doctor did not detect, any mental problems.

After his discharge plaintiff was employed by a private ambulance company for approximately one year and by United Parcel Service for approximately nine months. Plaintiff alleges that throughout this period he was unable to discuss the alleged trauma he underwent aboard the U.S.S. Fox, he suffered from nightmares, and he was subject to emotional outbursts.

At some point, the exact time period is disputed by the parties, plaintiff began abusing narcotics. Plaintiff contends that he was attempting to self-medicate to cope with the effects of the emotional trauma allegedly incurred while he was on board the U.S.S. Fox. Defendant contends that plaintiff's substance abuse began as early as 1966, when he was still in high school, and continued throughout his Navy service. Defendant's position is supported by plaintiff's then-wife, who was reported as stating in connection with a 1975 social service review of plaintiff's background that plaintiff had been abusing narcotics prior to his enlistment in the Navy.

In October 1971 plaintiff entered the Veteran's Administration (the "VA") hospital at Northampton, MA, where lie was diagnosed as a narcotic dependant schizophrenic. Soon thereafter plaintiff was committed to the Northampton State Hospital as a result of criminal proceedings stemming from narcotics charges. After his release plaintiff lived without incident for the next several years, although he continued to abuse narcotics during this period. Plaintiff again was admitted to the VA hospital in December 1975 and was once again diagnosed as a narcotic dependent schizophrenic. His records show that during this 1975 stay at the VA hospital, plaintiff made no mention of the alleged incident on board the U.S.S. Fox.

After his 1975 hospitalization, plaintiff sought a disability rating from the VA. This request was denied on the ground that plaintiff's mental problems were not the result of his active duty service, but were caused by his narcotics abuse. In rendering this decision, the VA was not aware of the alleged incident on board the U.S.S. Fox, as plaintiff had made no mention of it in his discussion with staff physicians. Plaintiff was again admitted to the VA hospital in 1980 for problems related to his drug dependence. On both this occasion and in 1975, the VA determined that despite his narcotics addiction, plaintiff was competent and employable.

Plaintiff alleges that he began to discuss the alleged U.S.S. Fox incident in 1978 when he was a patient at the Northampton State Hospital under the care of Dr. Richard Sette. Defendant contends that plaintiff did not mention the U.S.S. Fox incident until 1980 and even then did so only as an aspect of recurrent nightmares, not as an actual event. Plaintiff remains an outpatient at Northampton under the care of Dr. Timothy O. Rowe, who submitted an affidavit to the effect that plaintiff no longer abuses narcotics, but is suffering from post-traumatic stress disorder ("PTSD") as a result of the alleged 1968 incident on board the U.S.S. Fox.

Plaintiff submitted an application to the Board for Correction of Naval Records (the

---

phine to alleviate the injured crewmen's pain. While plaintiff was assisting the injured crewmen, without any supervision, another individual contacted the Navy's Charleston, South Carolina hospital. According to plaintiff, an unidentified individual from the Charleston hospital directed him to give the injured crewmen fluid. Plaintiff complied with this advice and injected dextrose solution, via a catheter in the injured men's ankles. Plaintiff alleges that dextrose and morphine are a fatal combination that resulted in the deaths of an unspecified number of crewmen.

3. Plaintiff informed the Navy that his nervousness was caused by personal problems.

"BCNR") in 1982 seeking to amend his 1968 honorable discharge to a disability discharge on the ground that he had been suffering from undiagnosed PTSD as of the date of his 1968 discharge. The BCNR denied this request on June 15, 1982. Subsequently, plaintiff filed a second application on December 29, 1987, which the BCNR treated as a request for reconsideration and denied on March 22, 1988.

On June 13, 1988, plaintiff filed suit in the United States Claims Court, predecessor to the Court of Federal Claims, challenging the BCNR's June 1982 decision. The court stayed this suit until the BCNR had decided yet another request for reconsideration.[4] Although plaintiff was ordered to inform the court of the BCNR's disposition within two weeks of its issuance, he failed to comply with the court's order, and his suit was dismissed without prejudice in 1991.

In its August 26, 1991 decision, the BCNR denied plaintiff's request for reconsideration because no evidence showed that the Navy had erred in granting plaintiff an honorable discharge or that plaintiff had taken part in the rescue mission on board the U.S.S. Fox. The BCNR opined that plaintiff had failed to present evidence indicating that he was suffering from PTSD while on active duty. Moreover, the BCNR stated that the VA's acknowledgment of plaintiff's PTSD resulted from being misled with respect to the events that occurred on September 7, 1968 on board the U.S.S. Fox.[5]

Plaintiff filed a final request for reconsideration with the BCNR on April 25, 1996, providing the BCNR with his most recent VA disability rating and an affidavit from Dr. John P. Wilson, who asserted that plaintiff had been suffering from undiagnosed PTSD as of the date of his 1968 discharge from the Navy. The BCNR's Executive Director declined to submit plaintiff's application to the full BCNR for review on June 28, 1996, because it did not contain new or material

evidence and merely contained evidence based on facts that the BCNR had already refused to credit in its 1991 decision. Plaintiff subsequently filed suit in the Court of Federal Claims on May 21, 1997, seeking review of the BCNR's decision.

## DISCUSSION

### 1. Jurisdiction

In ruling on defendant's motion to dismiss, this court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)). However, the non-moving party bears the burden of establishing jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

The Court of Federal Claims lacks jurisdiction over any action that is not filed within the applicable statute of limitations. *See Soriano v. United States*, 352 U.S. 270, 273, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1572 (Fed.Cir.1994). As a limited waiver of sovereign immunity, the statute of limitations is to be construed strictly. *See Hart v. United States*, 910 F.2d 815, 818–19 (Fed.Cir.1990). Absent a contrary statutory provision, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1994). A claim against the United States Government accrues "when all events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." *Japanese War Notes Claimants Assoc. v. United States*, 178 Ct.Cl. 630, 632, 373 F.2d 356, 358 (1967).

---

4. The administrative record is unclear with respect to the exact date on which plaintiff filed this application. Viewing the evidence in a light most favorable to plaintiff, the court will deem the application filed in 1988 subsequent to the BCNR's March 23, 1988 denial of plaintiff's first request for reconsideration.

5. At this point plaintiff had received a partial disability rating from the VA. On April 5, 1995, the VA gave plaintiff a 100% disability rating retroactive to November 16, 1981.

Defendant maintains that plaintiffs cause of action accrued no later than June 15, 1982, the date on which the BCNR initially denied plaintiff's request to amend his military record to reflect a disability discharge. Defendant points to plaintiff's awareness that his claim accrued in 1982, because he filed his initial suit in the Claims Court on June 13, 1988—two days before the statute of limitations would have expired. Neither the filing of the initial suit nor plaintiff's repeated requests for reconsideration, defendant argues, tolled the statute of limitations or created a new cause of action.

 "It is well established that no claim for disability retirement pay or disability retirement status accrues until there has been a final decision or a refusal to act, upon request, by the proper board." *Asbury v. United States*, 30 Fed. Cl. 417, 419 (1994) (citing *Friedman v. United States*, 159 Ct.Cl. 1, 24, 310 F.2d 381, 395–96 (1962)). In the case at bar, the BCNR is such a proper administrative authority,[6] in that plaintiff was discharged from the Navy without the benefit of having had his alleged disability considered by a review panel prior to his date of separation. Thus, plaintiff's discharge date is not the date on which his claim accrued.

Plaintiff takes issue with the June 1982 date on the ground that it was not the BCNR's final action or refusal to act. According to plaintiff, either the BCNR's 1991 or 1996 decision is a final decision that fixes the date on which plaintiff's claim accrued. Because both of these decisions were issued within six years of the date on which the current action was filed, either potentially would allow the court to entertain plaintiff's claim.

 Both the 1991 and 1996 actions by the BCNR were the result of plaintiff's efforts to have the BCNR reconsider its 1982 decision. A motion for reconsideration is an essential component of the adjudicative process. "Whenever a question concerning administrative, or judicial, reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other." *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 321, 81 S.Ct. 1611, 1617, 6 L.Ed.2d 869 (1961). In view of those two competing interests, administrative bodies consistently have been permitted to reconsider their decisions. Yet, the power of reconsideration is not without limitation. A motion for reconsideration will be entertained only if the "administrative action is conducted within a short and reasonable time period." *Bookman v. United States*, 197 Ct.Cl. 108, 112–13, 453 F.2d 1263, 1265 (1972).

 The Court of Claims has applied this rule to cases involving claims for disability pay. In *Dayley v. United States*, 169 Ct.Cl. 305, 308 (1965) (per curiam), the court stated that "it is the inherent right of every tribunal to reconsider its own decisions within a short period after the making of the decision and before an appeal has been taken or other rights vested." The court also stated that a timely request for reconsideration would toll the statute of limitations.

 The issue therefore devolves to whether plaintiff filed his various requests for reconsideration within a short time period after the BCNR's 1982 decision. The applications at issue were filed in 1988, six years after the initial decision, and in 1996, 14 years after the initial decision. Plaintiff's lack of diligence is particularly egregious, as plaintiff admits that as early as 1978 he began to discuss the alleged incident on board the U.S.S. Fox: "It was not until October, 1978, when Aubre was again admitted as an inpatient at Northampton and seen by Richard Sette, that the origin of his disorder was traced to the stressor [sic] of the fire aboard the Fox." Plf's Br. filed Jan. 7, 1998, at 10. Neither the 1988 nor the 1996 applications was submitted within even the most generous definition of a reasonable or

---

6. In most cases the proper board will be a physical evaluation board ("PEB") that evaluates a disability claim prior to separation from the armed forces. However, if the claimant is not reviewed by a PEB, a correction board's final decision indicates the date on which a claim accrues. *See Real v. United States*, 906 F.2d 1557, 1560 (Fed.Cir.1990).

"short," *see Dayley,* 169 Ct.Cl. at 308, time period after the BCNR's initial 1982 decision.[7]

In cases where the claimant has failed to timely file a motion for reconsideration "the underlying appeal period is not tolled unless the motion is considered on its merits." *K & S Constr. v. United States,* 35 Fed.Cl. 270, 276 (1996), *aff'd,* 121 F.3d 727 (Fed.Cir.1997) (Table) (citing *Pfister v. Northern Illinois Fin. Corp.,* 317 U.S. 144, 150, 63 S.Ct. 133, 137–38, 87 L.Ed. 146 (1942)). The Court of Claims has ruled in a disability case that the "mere presentation of new evidence to a reviewing board does not constitute such a 'reopening' [so as to deprive an earlier decision of finality] where the board does not accept that new evidence as sufficient to overturn the adverse decision of the prior board." *Robinson v. United States,* 163 Ct.Cl. 235, 237 (1963) (per curiam). The court explained that the cases in which a subsequent administrative decision created a new period of limitations were distinguishable. These cases involved instances where "the service itself moved to accord the plaintiff a new hearing on the basis of a new regulation or interpretation of law." *Id.* (discussing *Capps v. United States,* 133 Ct.Cl. 811, 137 F.Supp. 721 (1956) (discussing change of pertinent regulation); *Schiffman v. United States,* 162 Ct.Cl. 646, 319 F.2d 886 (1963) (discussing change of policy)).

In the case at bar, plaintiff's actions fall under the rubric of *Robinson.* In its 1991 decision, the BCNR found that plaintiff's alleged new and material evidence was devoid of credibility. The mere consideration of allegedly new and material evidence is insufficient to create a new period of limitations. *See Robinson,* 163 Ct.Cl. at 237; *see also Bruno v. United States,* 214 Ct.Cl. 383, 386–87, 556 F.2d 1104, 1106 (1977) (reopening plaintiff's case twice by BCNR does not deprive initial PEB decision of finality). Moreover, the BCNR upheld its original 1982 decision. In 1996 the Executive Director of the BCNR found that plaintiff's 1996 application was premised upon the same flawed factual allegations that the BCNR had previously rejected and declined even to submit the request to the full BCNR.

Plaintiff also seeks to avoid the statute of limitations by contending that the 1991 and 1996 submissions to the BCNR each create a claim independent from the BCNR's refusal to amend his military record. The crux of plaintiff's argument is that the BCNR arbitrarily and capriciously refused to consider what plaintiff characterizes as new and material evidence pertaining to the source of his alleged PTSD, thereby creating a new cause of action. Plaintiff relies primarily on *Geyen v. Marsh,* 775 F.2d 1303 (5th Cir.1985), and *Dougherty v. United States Board for Correction of Naval Records,* 784 F.2d 499 (3d Cir.1986). To the extent that these cases may be inconsistent with Federal Circuit precedent, the court cannot rely on them.

*Geyen* is not a disability case. In *Geyen* plaintiff was seeking to have an undesirable discharge changed to an honorable discharge. The Fifth Circuit ruled that the correction board's refusal to amend plaintiff's discharge created a cause of action independent from that challenging the actual discharge. Thus, plaintiff had six years from the board's decision to file suit. The Federal Circuit has rejected this theory and held that resort to permissive administrative remedies does not toll the statute of limitations. *See Hurick v. Lehman,* 782 F.2d 984, 987 (Fed.Cir.1986) ("No matter how the appellant seeks to frame his claim, in the final analysis he is challenging his discharge, and his attempt to do so was untimely.")

*Dougherty* is also unhelpful to plaintiff. The *Dougherty* court held that the statute of limitations did not begin to run until the correction board renders its final decision. As discussed previously the 1991 and 1996 decisions were not final agency decisions. Moreover, *Dougherty* was decided pursuant to the Administrative Procedure Act, which, according to the *Dougherty* court, creates a different standard of judicial review in actions seeking non-monetary relief 784 F.2d at

---

7. By way of comparison, RCFC 60(b) permits litigants only one year to present newly discovered evidence. It would be unreasonable for the court to countenance evidence submitted to the BCNR six years after its initial decision.

502 n. 10. As a consequence, the *Dougherty* court stated expressly that its holding was driven, in part, by the equitable nature of the case; it did not attempt to harmonize its result with a case such as *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381 (1962), which is binding on this court.

■ Although not raised directly by plaintiff, his dependency on narcotics potentially could toll the statute of limitations if it was so severe as to constitute a legal disability. *See* 28 U.S.C. § 2501 (1994). To prevail on such a claim, plaintiff must demonstrate an inability to comprehend the character of his discharge. *See Duvall v. United States,* 227 Ct.Cl. 642, 647 (1981). Plaintiff cannot make such a showing.

On each occasion that plaintiff was hospitalized, on either a voluntary or involuntary basis, the treating physicians found him to be competent. Furthermore, plaintiff demonstrated the ability to pursue both administrative and legal remedies. He petitioned the BCNR for review of his military records in 1982 and apparently was aware of the need to comply with the statute of limitations when he filed his 1988 suit in the Claims Court just prior to the six-year deadline.[8] The *Duvall* court deemed the pursuit of administrative remedies persuasive evidence that a legal disability due to narcotics abuse was not present. 227 Ct.Cl. at 647.[9] Plaintiff could have raised his current claim during his initial request to the BCNR in 1982.

Were the court to entertain plaintiff's claim, the result would be untenable, for the court's jurisdictional statute of limitations would be rendered meaningless. A member of the armed forces would need only file a request for reconsideration with the appropriate board to resuscitate a claim as much as five years or more after the board's deci-

sion to begin the running of a new limitations period. Such a result is utterly inconsistent with Congress' limited waiver of sovereign immunity enabling aggrieved individuals to seek redress in the Court of Federal Claims. A waiver of sovereign immunity is to be construed strictly. *See Hart,* 910 F.2d at 818–19. Defendant's motion to dismiss is granted.

### 2. *The merits*

Assuming the court were to have jurisdiction to entertain plaintiff's claim, defendant would be entitled to judgment on the administrative record.

■ To overturn the BCNR's decisions, plaintiff must overcome "the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (*en banc*) (citations omitted). In order to prevail plaintiff must show by "cogent and clearly convincing evidence," *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986) (quoting *Dorl v. United States,* 200 Ct.Cl. 626–27 (1973)), that the BCNR's decision was "illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due." *Sanders,* 219 Ct.Cl. at 298, 594 F.2d at 811; *see also Wronke,* 787 F.2d at 1576. In making this determination, the Court of Federal Claims is not to supplant the judgment of the BCNR with its own, *Wronke,* 787 F.2d at 1576, but merely ascertains whether the BCNR's decision is supported by substantial evidence.

---

8. The court dismissed this suit without prejudice in 1991. Such a dismissal does not toll the statute of limitations. *See Dupree v. Jefferson,* 666 F.2d 606, 610 (D.C.Cir.1981) (stating that "the general rule ... is that 'if a plaintiff mistakes his remedy, in the absence of any statutory provisions saving his rights, or where from any cause ... the action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred.' ") (quoting *Willard v. Wood,* 164 U.S. 502, 523, 17 S.Ct. 176, 181, 41 L.Ed. 531 (1896)).

9. Even if the court were to find that plaintiff's narcotics abuse constituted a legal disability, plaintiff would have only three years from the cessation of his disability to file suit in the Court of Federal Claims. *See* 28 U.S.C. § 2501 (stating that action must be initiated within three years of cessation of disability). Plaintiff has stated that he has not abused narcotics since 1980. *See* Plf's Br. filed Jan. 7, 1998, at 11.

*See Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983). Even if plaintiff demonstrates the presence of a material legal error in the BCNR's decision, he must also show a nexus between that error and being discharged without disability benefits. *See Hary v. United States,* 223 Ct.Cl. 10, 15–16, 618 F.2d 704, 706 (1980).

In order to receive a disability discharge and the accompanying disability benefits a member of the armed forces must be declared

> unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay ... if the Secretary also determines that—
>
> (1) based upon accepted medical principles, the disability is of a permanent nature and stable;
>
> (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
>
> (3) either—
>
>> (A) the member has at least 20 years of service computed under section 1208 of this title; or
>>
>> (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veteran's Affairs at the time of the determination; and either—
>>
>>> (i) the member has at least eight years of service ...
>>>
>>> (ii) the disability is the proximate result of performing active duty;
>>>
>>> (iii) the disability was incurred in line of duty in time of war or national emergency....

10 U.S.C. § 1201 (1994). Thus, in order to convert plaintiff's honorable discharge into a disability discharge, the BCNR would have to find that he was suffering from PTSD as of his September 24, 1968 discharge.

In both its 1991 and 1996 decisions, the BCNR refused to credit plaintiff's version of the events on board the U.S.S. Fox that allegedly resulted in his developing PTSD. In support of the 1991 decision, the BCNR reviewed the contemporaneous logs from the U.S.S. Wilson and U.S.S. Fox, which list the names of the servicemen who were detailed to assist the U.S.S. Fox; plaintiff is not among those listed.

The follow-up investigation referred to in the BCNR's 1991 decision found that medical assistance was provided primarily by the medical staff of the U.S.S. Fox itself. This refutes plaintiff's assertion that he was the only medic on board the U.S.S. Fox and was therefore required to treat the injured seamen without appropriate supervision. The contemporaneous records also state in detail the number of fatalities and when they occurred. Plaintiff's account of these facts is not consistent with these records.

The BCNR also noted that plaintiff's military record contained no evidence that he was suffering from PTSD from September 7, 1968—the date of the fire on board the U.S.S. Fox—to September 24, 1968—the date of his discharge.[10] Finally, the BCNR stated that during his obligatory pre-discharge physical, the treating physician found no evidence of any mental problems and that plaintiff was given an opportunity to bring any such ailments to the attention of the Navy but failed to do so.

Of particular relevance to the BCNR's findings was that plaintiff did not seek psychiatric treatment until 1971, three years after his discharge. During this period plaintiff was employed by an ambulance company and by United Parcel Service. Furthermore, although plaintiff had been treated on several occasions for mental problems, he never discussed the alleged incident on board the U.S.S. Fox until 1978.

The BCNR determined that plaintiff had received a disability rating from the VA only

---

**10.** The court acknowledges that PTSD was not a recognized ailment until 1980. However, when reviewing plaintiff's claim, the BCNR noted that nothing in his record suggested symptoms that now would be diagnosed as PTSD. As Judge Lydon noted in a strikingly similar case, *Kirwin*

*v. United States,* 23 Cl.Ct. 497, 507 n. 13 (1991), even though PTSD had not been "given a diagnostic name until 1980 ... its symptoms ... would have been overt and noticeable had they been so inhibiting as to affect [plaintiff's] fitness for duty."

because it had accepted his version of the events that occurred on September 7, 1968. Apparently, when investigating plaintiff's version of the fire on board the U.S.S. Fox, the VA merely confirmed that plaintiff had served on board the U.S.S. Wilson and that members of the U.S.S. Wilson had participated in a rescue mission on board the U.S.S. Fox. According to the BCNR, the misinformation supplied by plaintiff caused the VA to determine mistakenly that plaintiff's narcotics dependency and the associated legal problems were caused by previously undiagnosed PTSD. In brief, the BCNR was of the opinion that had the VA not been misled as to the events surrounding plaintiff's alleged participation in the rescue on board the U.S.S. Fox, it would not have granted plaintiff a disability rating.

The BCNR acted within its purview to discount the fact that plaintiff had received a 100% disability rating from the VA. These rating decisions are merely pertinent evidence. *See Finn v. United States,* 212 Ct.Cl. 353, 357, 548 F.2d 340, 342 (1977). The VA system is designed to afford relief to former members of the armed forces who become disabled after their discharge due to injuries related to their military service. In contrast, the Navy's disability discharge determination sought evidence of whether plaintiff was disabled at the time of his discharge. That the VA granted plaintiff a disability rating retroactive only to 1981 is in fact persuasive evidence that plaintiff was not disabled prior to that date. *See Kirwin v. United States,* 23 Cl.Ct. 497, 507 (1991) ("[T]hat the VA retroactively applied plaintiff's 100% disability rating only to 1982, and not 1978, gives some indication that plaintiff was not suffering from PTSD at the time of his discharge.")

The 1996 refusal to submit plaintiff's request to the BCNR was based on the fact that plaintiff had failed to offer any new or material evidence. In support of his 1996 application, plaintiff provided the BCNR with his updated 100% disability rating from the VA and the affidavit of Dr. Wilson. The VA rating in and of itself does not constitute new or material evidence given that the BCNR already had determined that it was premised upon incorrect factual findings. Dr. Wilson's affidavit is flawed for the same reason. As defendant points out, Dr. Wilson reached his diagnosis that plaintiff was suffering from undiagnosed PTSD by taking "a retrospective view" of the evidence. Def's Br. filed Oct. 31, 1997, at 21. Dr. Wilson went so far as to state that it was unrealistic for the BCNR to discount plaintiff's version of the events that occurred on September 7, 1968. Dr. Wilson's opinion obviously is based primarily on plaintiff's version of the September 7, 1968 events.

The applicable regulations state:

All requests for further consideration will be initially screened by the Executive Director of the Board to determine whether new and material evidence or other matter (including, but not limited to, any factual allegations or arguments why the relief should be granted) has been submitted by the applicant. If such evidence or other matter has been submitted, the request shall be forwarded to the Board for a decision. If no such evidence or other matter has been submitted, the applicant will be informed that his/her request was not considered by the board because it did not contain new and material evidence or other matter.

32 C.F.R. § 723.9 (1997). Because the BCNR already had determined that plaintiff's version of the events that occurred on September 7, 1968, was bereft of credibility, it considered the current VA rating and Wilson affidavit to not constitute new or material evidence. On this basis the BCNR's Executive Director was within his purview to refuse to submit the most recent application to the entire BCNR.

The explanation provided by the BCNR for refusing to consider either the 1991 or 1996 requests for reconsideration is supported by substantial evidence. Plaintiff has provided the BCNR with nothing more than his own uncorroborated assertion that his version of the September 7, 1968 events is true. In opposition to plaintiff's reconsideration request, the BCNR was presented with comprehensive and contemporaneous documents indicating that plaintiff had exaggerated his role in the fire on board the U.S.S. Fox. The BCNR noted that official

records are presumed accurate. Plaintiff provided no evidence to the contrary. The BCNR's 1991 and 1996 decisions were supported by substantial evidence.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss based on the statute of limitations is granted. The Clerk of the Court shall enter judgment dismissing the complaint for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.