Pat H. HAYES, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 06–254 L.

United States Court of Federal Claims.

Oct. 30, 2006.

Pat H. Hayes, Anadarko, OK, pro se.

E. Kenneth Stegeby, with whom was Sue Ellen Wooldridge, Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

Before the court are Defendant's Motion to Dismiss for Lack of Jurisdiction and Memorandum in Support Thereof (Def.'s Mot.), plaintiff's Answer [to] Defendant's Motion to Dismiss for Lack of Jurisdiction and Memorandum in Support Thereof[1] (Pl.'s Resp.), and defendant's Reply Brief in Support of Motion to Dismiss for Lack of Jurisdiction (Def.'s Reply). Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. For the following reasons, defendant's motion is DENIED.

## I. Background

Plaintiff alleges that the Acting Area Director for the Bureau of Indian Affairs (BIA), Muskogee Area Office, improperly stopped monthly direct payments of oil and gas royalties to Leona James Hayes, plaintiff's mother, and failed to notify Leona Hayes of this action.[2] Plaintiff's Amended Complaint[3] (Compl.) 4, 10–11, 13, 15. Leona Hayes, a citizen of the Chickasaw Nation, was the original allottee of 140 acres of land and held an interest in the appurtenant mineral rights. *Id.* at 58. Plaintiff alleges that Leona Hayes received monthly payments from oil and gas leases. *Id.* at 12, 14. On March 9, 1999, the Acting Area Director issued three Authorization of Payment letters that revoked direct payment of oil and gas royalties to Leona Hayes and ordered the oil and gas companies to submit payments to the BIA Royalty Management Program. *Id.* at 51–56. Leona Hayes died on February 24, 2002. Pl.'s Resp. 5. On December 16, 2002, the District Court in and for Caddo County, Oklahoma appointed plaintiff the personal representative of Leona Hayes's estate. Compl. 63–64; Def.'s Mot. Ex. C. Plaintiff filed his initial complaint in this matter on March 30, 2006 and his amended complaint on June 16, 2006.

In its motion to dismiss, defendant notes that plaintiff's original and amended complaints do not clearly indicate who is the intended claimant: Pat H. Hayes, representing his own interests, or the estate of Leona James Hayes, represented by Pat H. Hayes. Def.'s Mot. 5–6. In his response to the motion, plaintiff clarifies that he is the claimant and that the estate of Leona James Hayes is not party to the lawsuit. Pl.'s Resp. 6. Defendant acknowledges plaintiff's admission. Def.'s Reply 1. The court remains unclear about plaintiff's interest in the claims. Al-

1. Plaintiff's response also included a counterclaim for summary judgment. The court allowed filing of Plaintiff's Response and Counterclaim but struck all material in the response that sought relief in counterclaim. *See* Order of Sept. 7, 2006.

2. On March 5, 2002, plaintiff filed a similar action in this court against defendant in the name of Leona James Hayes. Def.'s Mot. Ex. B. Chief Judge Damich dismissed plaintiff's com-

plaint without prejudice on November 6, 2002. *Hayes v. United States,* no. 02–169L, Order of Nov. 6, 2002 (Fed.Cl.2002) (*Hayes I*). The Federal Circuit denied plaintiff's appeal of the Nov. 6, 2002 order. *See Hayes v. United States,* 68 Fed.Appx. 971 (Fed.Cir.2003) (Table).

3. The page number citations to Plaintiff's Amended Complaint reference the renumbered pages of plaintiff's complaint submitted by defendant. Def.'s Mot. Ex. A.

though plaintiff states that he is the personal representative of the estate of Leona James Hayes, Pl.'s Resp. 6, it is unclear whether plaintiff actually holds an interest in Leona James Hayes's estate or in the oil and gas leases affected by the Authorization of Payment letters. Plaintiff has provided a copy of Leona James Hayes's will, see Compl. 65–71, but it is unclear whether this will is authentic or whether it has been probated and, if so, how the probate affects plaintiff's interest in the claims.

The allegations in plaintiff's complaint appear to assert claims under both the Contract Disputes Act, 41 U.S.C. §§ 601–13(CDA), and the Takings Clause of the Fifth Amendment of the United States Constitution. Compl. 5, 10–11. It is not clear to this court that a contract under the CDA involving plaintiff (or plaintiff's late mother) exists. See *The Sweetwater, A Wilderness Lodge, LLC v. United States,* 72 Fed.Cl. 208, 226 (2006), *modified,* 72 Fed.Cl. 208 (2006) (stating that the CDA applies to any executive agency express or implied contract for the procurement of services that are for the " 'direct benefit' or use of the Federal Government' ") (quoting *New Era Constr. v. United States,* 890 F.2d 1152, 1157 (Fed.Cir. 1989)). Plaintiff alleges that the Acting Area Director ceased direct payment of oil and gas royalties in order to pay overdue state and federal taxes on plaintiff's mother's property. Compl. 11; Pl.'s Resp. 1–2. The Authorization of Payment letters do not indicate reasons for redirecting payment of oil and gas rents from plaintiff's mother to the BIA Royalty Management Program. See Compl. 51–56. Plaintiff also alleges that the Acting Area Director did not have the authority to stop direct payment. *Id.* at 11. The Act of May 10, 1928, Pub.L. No. 70–360, 45 Stat. 495 (1928) (1928 Act) and sections 213.1–.49 of the Code of Federal Regulations (2005)

govern the land restrictions and mineral leases of the Five Tribes of Oklahoma[4], which include the Cherokee, Chickasaw, Choctaw, Creek, and Seminole. See Nell Jessup Newton et al., *Cohen's Handbook of Federal Indian Law* 294–98 (2005 ed.) (discussing the history of the Five Tribes of Oklahoma).

Defendant has moved to dismiss plaintiff's complaint on the basis of lack of jurisdiction. Def.'s Mot. 1. Defendant asserts that the court lacks jurisdiction because plaintiff's claims are time-barred. *Id.*

II. Discussion

A. Jurisdiction

The Tucker Act, 28 U.S.C. § 1491 (2000), confers upon this court jurisdiction over certain claims against the United States. It provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Section 2501 of title 28 of the United States Code imposes a limitation on the court's jurisdiction over claims that are not filed within six years after the claim first accrues. 28 U.S.C. § 2501 (2000). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *Id.* "The 6–year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United*

4. Historically, and in the Act of May 10, 1928, Pub.L. No. 70–360, 45 Stat. 495 (1928) (1928 Act) and federal regulations governing the tribes' mineral leases, the Cherokees, Chickasaws, Choctaws, Creeks, and Seminoles were referred to as the "Five Civilized Tribes." *See* Nell Jessup Newton et al., *Cohen's Handbook of Federal Indian Law* 45 n. 272 (2005 ed.). These tribes are now known as the "Five Tribes." *Id.* From approximately 1815 to 1846, the federal govern-

ment instituted a policy of removing Indians from their lands in the eastern United States to lands in the West. *Id.* at 45. The removal policy had a tremendous impact on the Five Tribes. *Id.* at 52 (describing the Cherokee Trail of Tears). During the removal period, the Five Tribes were forcibly removed from the southeastern region of the United States to what is now Oklahoma. *Id.* at 294.

*States*, 855 F.2d 1573, 1576–77 (Fed.Cir. 1988).

## B. Standard of Review

RCFC 12(b)(1) governs the dismissal of a claim for lack of subject matter jurisdiction. "The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)). The court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor" when ruling on a RCFC 12(b)(1) motion to dismiss. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Plaintiff bears the burden of showing by a preponderance of the evidence that the court has jurisdiction to hear the claim. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed.Cir. 2002) (citing *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994)) *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

Pro se complaints are generally held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); see also *Vaizburd v. United States*, 384 F.3d 1278, 1285 n. 8 (Fed.Cir. 2004) (noting that pleadings drafted by pro se parties "should ... not be held to the same standard as [pleadings drafted by] parties represented by counsel") (citation omitted). "Indeed, it has long been the traditional role of this court to examine the record 'to see if [a pro se] plaintiff has a cause of action somewhere displayed.'" *Hunsaker v. United States*, 66 Fed.Cl. 129, 132 (2005) (quoting *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969) (alteration in original)). Nevertheless, "[t]his latitude ... does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed.Cl. 497, 499, aff'd, 98 Fed.Appx. 860 (Fed.Cir.2004) (Table); see also *Kelley v. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only.").

## C. Whether Plaintiff's Claim is Time–Barred

### 1. The Date of Accrual of Plaintiff's Claim

█ Because the six-year statute of limitations is a condition of the government's sovereign immunity and determinative of the jurisdiction of the court, plaintiff's claim must have been filed within six years after the claim first accrued. 28 U.S.C. § 2501. "A claim accrues when all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action." *Creppel v. United States*, 41 F.3d 627, 631 (Fed.Cir.1994) (citing *Japanese War Notes Claimants Ass'n of the Phil., Inc. v. United States*, 178 Ct.Cl. 630, 373 F.2d 356, 358 (1967) *(Japanese War Claimants))*; see also *Sankey v. United States*, 22 Cl.Ct. 743, 745 (1991) ("[T]he court must focus on the issue of 'first accrual,' i.e., that point at which events transpired 'entitling the claimant to bring suit alleging breach.'" (citation omitted)). The facts of a claim need not be actually known to the plaintiff but must be available to the plaintiff. *Menominee Tribe of Indians v. United States*, 726 F.2d 718, 720–21 (Fed.Cir.1984). Plaintiff need only be "on inquiry [notice] that [he] has a potential claim" to trigger the statute of limitations. *Japanese War Claimants*, 373 F.2d at 359.

Defendant asserts that plaintiff's claim accrued on March 9, 1999. Def.'s Mot. 8. Plaintiff's claim stems from the March 9, 1999 letters sent by the Acting Area Director to the oil and gas company lessees of plaintiff's mother's mineral rights. Compl. 10; Pl.'s Resp. 5, 6, 12. Plaintiff does not argue that any other possible date is the actual date of accrual and consistently refers to the three March 9, 1999 letters as the events from which his claim arises. See Compl. *passim;* Pl.'s Resp. *passim.* However, plaintiff did

not file his claim until March 30, 2006, seven years and three weeks later. Compl. 1.

Plaintiff has attempted to save his claim from the bar of the statute of limitations by asserting that his claim is not time-barred either because it relates back to the date plaintiff first filed a similar claim before this court or because it constitutes a continuing claim. Compl. 7–15.

## 2. The Effect of Plaintiff's Earlier Suit on the Statute of Limitations

Plaintiff filed a claim in this court on March 5, 2002 based on the March 9, 1999 letters. Def.'s Mot. Ex. B. The case was dismissed by Chief Judge Damich without prejudice on November 6, 2002. *Hayes v. United States,* no. 02–169L, Order of Nov. 6, 2002 (Fed.Cl.2002) (*Hayes I*).

■ Plaintiff now argues that this case, "[b]y Judge Damich's order, . . . is a continuation case until [plaintiff] is the personal rep[resentative of the Leona James Hayes estate]." Pl.'s Resp. 7. Plaintiff appears to argue that because he filed his earlier suit within the statutory period, the present claim should also fall within the statutory period. However, the order in the first case made no reference to an extension of the statute of limitations for plaintiff's subsequent refiling of his claim. Def.'s Mot. Ex. B; Def.'s Reply 3.

> Plaintiff is advised that [the] dismissal does not operate as a dismissal on the merits of his complaint and that he *may* (although the Court hereby makes no representation as to such) be fully within his legal rights to refile his Complaint if and when he is either the legal representative of his mother's estate or become the lawful title-holder of the property in question, or both.

Order of Nov. 6, 2002, *Hayes I,* No. 02–169L. The language on which plaintiff relies does not lend support to plaintiff's argument that the present action constitutes a continuing claim nor that plaintiff has a legal right to file a claim more than six years after an assumed accrual date of March 9, 1999.

Defendant argues that "[p]laintiff's filing of the earlier suit and the subsequent appeal did not toll the six-year statute of limitations." Def.'s Mot. 10 (citing *Dupree v. Jefferson,* 666 F.2d 606, 611 (D.C.Cir.1981) (quotation omitted); *Aubre v. United States,* 40 Fed.Cl. 371, 378 n. 8 (1998) ("citing *Dupree,* the court noted that the dismissal of earlier administrative and legal proceedings did not toll the statute of limitations")). Plaintiff's earlier suit was dismissed without prejudice. Because this court regards a dismissed action as having never existed, *Holloway v. United States,* 60 Fed.Cl. 254, 261 (2004) (citation omitted) ("When an action is dismissed[,] it is as if it never existed."), plaintiff's earlier suit does not toll the statute of limitations for the present complaint. In *Holloway,* after filing a complaint in a United States District Court, the plaintiff simultaneously filed a timely claim in the Court of Federal Claims. *Id.* at 258. Because the Court of Federal Claims cannot consider law suits that have been filed in other courts, the plaintiff filed a motion voluntarily to dismiss without prejudice. *Id.* at 259. The plaintiff later filed a substantially similar claim with the Court of Federal Claims but the claim was not within the six-year statute of limitations. *Id.* Accordingly, the court dismissed the plaintiff's complaint noting that "the present complaint cannot 'relate back' to something that *de jure* never existed." *Id.* at 261.

The "relation back" concept arises from RCFC 15(c) and 17(a). RCFC 15(c) provides for a "relation back" concept regarding amended pleadings. See RCFC Rule 15(c); see also *Holland v. United States,* 62 Fed.Cl. 395, 407 (2004) (stating the relation back test for RCFC 15(c)(2)). RCFC 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest." RCFC 17(a); see also *Admiral Fin. Corp. v. United States,* 51 Fed.Cl. 366, 369 (2002) ("The 'relation back' concept for statutes of limitations purposes ordinarily applies when the real party in interest seeks to displace the original, timely plaintiff, which is suing in a derivative capacity."). The facts here do not support an argument for relation back of amended pleadings or displacement of an original, timely plaintiff.

Nevertheless, plaintiff argues that his present complaint relates back to his original

case and that the "case at bar is a continuation of 'Hayes–I.' " Pl.'s Resp. 15; *see also* Pl.'s Resp. 7. Plaintiff incorrectly cites RCFC 15(c)(2) and 40.2(a)(3) in support of his argument. Pl.'s Resp. 7, 15. RCFC 40.2(a)(3) pertains to two or more separate but directly related cases and the procedure to transfer and consolidate the cases. RCFC 40.2(a)(3). This rule does not address a relation back concept. Because the outcome of plaintiff's initial case was a dismissal without prejudice, the initial case is a nullity and the present claim cannot relate back to that dismissed case.

3.   Whether Plaintiff's Claim is a Continuing Claim

■   In his complaint, plaintiff alleges that "[t]he continuous monthly taking of plaintiff's royalties including annual rentals constitutes restart of the statute of limitations." Compl. 7; *see also* Pl.'s Resp. 12. Plaintiff does not elaborate on this issue in his response to defendant's motion to dismiss, nor does he provide legal support for his assertion that his claim falls within the continuing claim doctrine. Nevertheless, the court considers the applicability of the continuing claim doctrine to plaintiff's claim.

"The continuing claim doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events." *Ariadne Fin. Servs. Pty. Ltd. v. United States,* 133 F.3d 874, 879 (Fed.Cir.1998). "In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1456 (Fed.Cir.1997). A continuing claim requires "recurring, individual actionable wrongs." *Id.* at 1459. The Federal Circuit has clearly stated that the doctrine does not apply to "a claim based upon a single distinct event, which may have continued ill effects later on." *Id.* at 1456; *see also Ariadne,* 133 F.3d at 879.

The *Ariadne* case is sufficiently similar to this case to be dispositive of the question whether plaintiff's claim is a continuing claim. In *Ariadne,* the government promised the parties to a contract the use of an asset for twenty-five years. *Ariadne,* 133 F.3d at 878. Four years into the agreement, the government repudiated the contract by denying the parties access to the asset. *Id.* The plaintiff filed an untimely claim that the Court of Federal Claims dismissed. *Id.* at 877. The plaintiff appealed and argued that its claim was saved by the continuing claim doctrine. *Id.* at 879. The plaintiff argued that it was entitled to compensation for each year it lost use of the asset. *Id.* The Federal Circuit upheld the determination of the Court of Federal Claims, noting that "the government's continued refusal to allow the use of [the asset] flows from its original repudiation." *Id.* Further, the Federal Circuit held that "[b]ecause Ariadne's claim does not involve a series of distinct events, each giving rise to an independent cause of action, the continuing claims doctrine does not act to preserve its claim." *Id.*

Here, as in *Ariadne,* plaintiff's claim stems from a single event—the March 9, 1999 letters, which effectively revoked payment of oil and gas royalties for plaintiff's mother's mineral leases. Similarly, plaintiff here argues that, for every month that his mother does not receive direct payment, another breach occurs thereby "restart[ing] ... the statute of limitations." Compl. 7. However, each alleged breach arises from the March 9, 1999 letters and does not constitute "a series of distinct events." *See Ariadne,* 133 F.3d at 879. Although plaintiff argues that there was a continued adverse effect of not receiving monthly royalty payments, Pl.'s Resp. 9, plaintiff's claim is incapable of "being broken down into a series of independent and distinct wrongs, each having its own associated damages." *Brown Park Estates,* 127 F.3d at 1456. Therefore, the continuing claim doctrine does not save plaintiff's claim from the statute of limitations.[5]

5.  Defendant also argues that "[p]laintiff's claims ... should be barred by the doctrine of laches." Def.'s Mot. 13; *see also* Def.'s Reply 9. Defendant contends that laches should apply because

"[p]laintiff has failed to prosecute his claims for several years despite express instructions by this Court and the Federal Circuit, and [p]laintiff's unreasonable delay has caused [d]efendant much

### D. Other Issues

Although the court finds that plaintiff's claim can not be viewed as relating back to his earlier suit, and that plaintiff's claim is not saved by the continuing claim doctrine, the court recognizes some unresolved issues that affect its ability to rule on the pending motion.

The court is unclear whether, under the lease or applicable regulations, the defendant was obligated to notify plaintiff's mother of the revocation of direct payment as provided in the March 9, 1999 letters to the oil and gas companies. The court is also unclear about when plaintiff and/or plaintiff's late mother received actual and/or constructive notice of the March 9, 1999 letters and/or their import.

The issue of notice was raised in the course of plaintiff's discussion of the continuing claim doctrine. Plaintiff argues that "[t]he revocation order given on March 9, 1999 by the Acting Area Director was a nullity and continuation of monthly royalties should still be continuous and statute of limitations should not apply." Pl.'s Resp. 12 (citation omitted)[6]. The court views this argument as claiming that the March 9, 1999 letters were invalid to provide notice because they were not issued under proper authority. Plaintiff specifically alleges that the "Df. revocation order was addressed to oil and gas co.'s and not to lessor in violation of 213.18(b)(c)." Pl.'s Resp. 11.[7]

Defendant appears to recognize plaintiff's argument as concerning a duty to provide notice. Defendant asserts that one of plaintiff's arguments is that 25 C.F.R. § 213.18 and section (3)(c) of the oil and gas leases "read either separately or in conjunction, create a continuous duty on Defendant to notify Plaintiff's mother, presumably of the fact that her direct royalty payments were to be terminated, and that the BIA somehow breached that duty." Def.'s Reply 4 (citing Pl.'s Resp. 11). Defendant turns to the takings prong of plaintiff's argument and argues that "[p]laintiff cannot pursue a takings claim against the United States to the extent that he argues that the BIA has violated its own regulations ... or breached a contract." Def.'s Reply 5 (citing *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir. 1993) ("[C]laimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act.")). That argument does not address the propriety of notice itself.

The court notes that 25 C.F.R. § 213.18(b) requires the BIA to provide written notification "to the owner or owners of the lease" and that "[w]ritten authorization for direct payment and written revocations ... thereof shall become a part of the lease and shall be distributed as in the case of original leases." 25 C.F.R. § 213.18(b). The import of the foregoing language for this case, or whether there was a basis under which the BIA was required to provide notice of a revocation of

---

prejudice as shown by the increase in the amounts claimed as damages in [p]laintiff's subsequent Complaints." Def.'s Mot. 13–14. Defendant's laches argument appears to be offered in the event that the court does not conclude that the statute of limitations began to run on March 9, 1999.

**6.** Plaintiff cites to the defendant's renumbered pages of plaintiff's amended complaint that contain copies of the March 9, 1999 letters and an email concerning the letters. Pl.'s Resp. 12.

**7.** Plaintiff alleges that "Acting Area Director, Randall Trickey, acting in his official capacity, did not possess the authority on March 9, 1999 to issue three Authorization of Payment letters ... pursuant to 'Sec. 3, 1928 Act,'" because "Sec. 3 of the '1928 Act' does not apply to members of the 5–Civilized Tribes." Pl.'s Resp. 9. Plaintiff then argues that the March 9, 1999 letters were

allegedly invalid. Pl.'s Resp. 12. This portion of plaintiff's argument appears to the court to be misdirected.

As indicated by defendant, "[t]he Authorization of Payment letters were not issued pursuant to the 1928 Act." Def.'s Reply 6. Rather, the letters merely referenced the Act to inform lease owners that state and federal taxes apply to oil and gas production covered by the lease. *Id.* at 6–7. Moreover, the 1928 Act contains no language indicating that section three does not apply to members of the Five Tribes. Even if section three of the 1928 Act somehow applied, plaintiff is simply in error about its application to the Five Tribes. Section three provides, "[t]hat all minerals, including oil and gas, produced on or after April 26, 1931 from restricted allotted lands of members of the Five Civilized Tribes in Oklahoma ... shall be subject to all State and Federal taxes." Act of May 10, 1928, Pub.L. No. 70–360, 45 Stat. 495, 496 (1928).

direct payment, are matters not made clear to the court in the documents before it. Among other things, the facts of this case do not indicate whether the lessor, plaintiff's mother, was included in the distribution of the original leases.

In order to assist the court in resolving these issues, the court requests that the parties simultaneously file supplemental briefs on or before November 30, 2006 addressing the following questions:

1. What is plaintiff's interest in the claims? What is the source of that interest? What documentation supports plaintiff's statement of interest in the claims?

2. When and how did plaintiff receive notice of the March 9, 1999 letters? When and how did Mrs. Leona James Hayes receive notice of the March 9, 1999 letters?

3. What is defendant's obligation under the lease, applicable regulations, and other applicable authorities to notify Mrs. Hayes of modification of direct payments? Was Mrs. Hayes included in the distribution of the original lease?

4. If notice was received by Mrs. Hayes after March 9, 1999, what is the impact of the delay of notice upon the statute of limitations? Specifically, is the time within which suit may be brought extended by any period of time between March 9, 1999 and the date of actual notice to Mrs. Hayes?

5. What authority, under the lease, applicable regulations, or other applicable authorities, governs the Acting Area Director's order of ending direct payment of oil and gas royalties to the plaintiff's mother? Was the Acting Area Director required to provide a reason for ceasing direct payment?

The court recognizes that the plaintiff, filing pro se, has encountered some procedural difficulties and challenges in application of appropriate substantive law. Therefore, the court suggests that plaintiff contact the Clerk of the Court at (202) 357–6400 to request a list of attorneys who may, on a pro bono basis, be available to assist plaintiff in pursuing his claim and preparing the requested supplemental brief.

If plaintiff is able to obtain such assistance, the pro bono attorney may, upon filing an appearance, request by motion a reasonable extension of the foregoing briefing schedule.

IT IS SO ORDERED.